UNITED STATES of America, Plaintiff–Appellee,

v.

Harry J. PIASECKI, Defendant–Appellant.

No. 91–2798.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1992.

Decided July 30, 1992.

Joseph C. Wyderko, argued, U.S. Dept. of Justice, Criminal Div., Washington, D.C., for plaintiff-appellee.

Hawk P.C. Kautz, argued, Merrillville, Ind., for defendant-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Harry J. Piasecki was convicted of one count of union racketeering, two counts of embezzlement of union funds, and one count of falsification of union records. Piasecki argues that these convictions should be reversed because the trial, which took place 341 days after his initial appearance before the court, failed to comply with the time limits set forth in the Speedy Trial Act, 18 U.S.C. § 3161. Alternatively, Piasecki argues the trial judge erred in failing to rule on his motion to dismiss based on statute of limitations and pre-indictment delay. We affirm.

I.

On April 10, 1990, an indictment was filed in the United States District Court for the Northern District of Indiana, Hammond Division. The indictment, in twenty-five counts, charged twelve defendants with a variety of acts including charges resulting from unlawful involvement in a large-scale bingo operation and with unlawful union activities. Count 1 jointly charged Piasecki and codefendants General "Jack" Parton, Phillip Cyprian, and Ezell Cooper for engaging in racketeering acts in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* This RICO count alleged that Piasecki and the codefendants had conducted the affairs of the United Steelworkers Union of America through a pattern of racketeering activity consisting of the embezzlement of union assets and the operation of an illegal gambling business. Moreover, the RICO count alleged twelve predicate racketeering acts, some of

which incorporated other counts of the indictment.

In addition to the RICO count, Piasecki and Parton were jointly charged in Counts 2 and 11 with embezzling union funds in violation of 29 U.S.C. § 501(c) and in Count 14 with falsifying union records, 29 U.S.C. § 439(c). Cyprian, Cooper, and nine codefendants were charged in Count 15 with conducting an illegal gambling business in violation of 18 U.S.C. § 1955. Moreover, Cyprian and Cooper were both charged under various other counts.

Piasecki made his initial appearance for these charges on May 30, 1990. After several reassignments of the case, on June 25, 1990, Chief Judge Sharp *sua sponte* entered a continuance under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(B)(ii). In this order Chief Judge Sharp found it "apparent that this case will involve intense media coverage, extensive documentary evidence as well as complex issues and multiple parties which will require a series of protracted proceedings." And, he further determined that because the case was both unusual and complex, "the ends of justice served by extending the time for trial in this case beyond the statutory deadline that would otherwise apply outweigh the best interest of the public and the defendants in a speedy trial." Then on July 20, 1990, during a status conference Chief Judge Sharp asked defense counsel if anyone objected to this "ends of justice" order under the Speedy Trial Act, and he asked that any such objections be put in writing within a week. Neither Piasecki nor any of the codefendants filed any written objections to the "ends of justice" order.

Up to this point Chief Judge Sharp had retained jurisdiction for all counts against all defendants. This began to change on July 31, 1990. On this date, upon motion of Parton and four other codefendants, Chief Judge Sharp severed Count 1, the RICO count, from Counts 2 through 25. Chief Judge Sharp assigned the RICO count to Judge Moody and retained jurisdiction of the remaining counts.

On October 3, 1990, Cooper entered a guilty plea, leaving Piasecki, Parton, and Cyprian to be tried on Count 1 in front of Judge Moody. So at this point Piasecki and Parton were before Chief Judge Sharp for Counts 2, 11, and 14, and they were before Judge Moody, along with Cyprian, for Count 1; whereas, Cyprian was before Judge Moody for Count 1, and before Chief Judge Sharp on numerous other counts. All this changed on December 24, 1990, when Chief Judge Sharp issued an order severing Counts 2, 11, and 14 as they applied to Piasecki and Parton. Chief Judge Sharp then assigned these severed counts to Judge Moody, meaning that Chief Judge Sharp had reassigned to Judge Moody all counts pertaining to Piasecki and Parton. Chief Judge Sharp had retained, however, jurisdiction over several counts naming Cyprian. As such, after December 24, 1990, Piasecki, Parton, and Cyprian were joined as codefendants before Judge Moody under Count 1 of the indictment, and Piasecki and Parton were joined before Judge Moody on Counts 2, 11, and 14.

On January 7, 1991, Chief Judge Sharp began a trial on the counts to which he had retained jurisdiction. Cyprian was a party to this trial which ended on February 7, 1991.

On February 14, 1991, Cyprian moved to dismiss Count 1 as it applied to him on grounds of double jeopardy, and Cyprian's counsel moved to withdraw. On March 1, 1991, Judge Moody held a pretrial conference with respect to Counts 1, 2, 11, and 14, and he set a trial date of May 6, 1991. After a discussion of Cyprian's motion to dismiss Count 1 and his counsel's motion to withdraw, Parton advised Judge Moody that his motion for severance would require additional action to determine whether Parton, Cyprian, and Piasecki should be tried together. Judge Moody directed Parton to file a renewed motion for severance. Afterward, Judge Moody asked whether the parties were planning to file any additional motions, and Piasecki's counsel indicated that this was a possibility. Judge Moody then set a deadline of March 15, 1991, for the filing of additional pretrial motions.

Parton filed a renewed motion for severance on March 7, 1991, and the government filed a response on March 8, 1991. On March 15, 1991, Parton filed a reply to the government's response. Then on April 26, 1991, Judge Moody denied Parton's motion for severance from Piasecki but granted Parton's motion for severance from Cyprian.

In the meantime, on March 15, 1991, Piasecki and Parton filed a joint motion to dismiss the indictment based on the Speedy Trial Act. The government filed a response on March 21, 1991. Then, on May 2, 1991, Judge Moody denied this motion to dismiss on two grounds. First, he concluded that the ends of justice continuance on June 25, 1990, applied to Parton and Piasecki even after they were entirely severed from the proceedings before Chief Judge Sharp on December 24, 1990. Second, he concluded, in the alternative, even if the ends of justice continuance had ceased to be applicable on December 24, 1990, there was sufficient excludable time before the trial date on May 6, 1991, to alleviate any Speedy Trial Act problems.

## II.

The Speedy Trial Act generally requires that a trial in a criminal case commence within seventy days of the filing of the indictment or from the date of the defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). The Act, however, provides for periods of excludable delay. *See* 18 U.S.C. § 3161(h)(1)–(9). One period of excludable delay provided for in the Act is delay resulting from a judge-ordered continuance based on findings that "the ends of justice" served by the delay outweigh the defendant's and public's interest in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). A court may grant such a continuance on its own motion, the government's motion, or defendant's motion. *Id.* Section 3161(h)(8)(B) contains a nonexclusive list of factors that the judge must consider in deciding whether to grant an ends of justice continuance. Included is this list is "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice" and "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by [the Act]." 18 U.S.C. § 3161(h)(8)(B)(i), (ii).

Piasecki argues that his trial, which began on May 6, 1991, 341 days after his initial court appearance, was not brought within the time limits set forth in the Speedy Trial Act. The government argues, however, that the time from June 25, 1990, until the May 6, 1991, trial constituted excludable time under 18 U.S.C. § 3161(h)(8). That is, the government argues that the ends of justice order entered by Chief Judge Sharp made all time after its entry excludable despite the fact that Chief Judge Sharp severed and transferred to Judge Moody Count 1 on July 31, 1990, and all remaining counts against Piasecki on December 24, 1990. Piasecki disagrees. That is, Piasecki argues that the ends of justice order ceased to be effective on either July 31, 1990, or December 24, 1990.[1] In raising this argument Piasecki raises the issue of whether the ends of justice order had any validity to counts transferred to Judge Moody.

The government makes several points in arguing that the ends of justice order was valid until the May 6, 1991, trial. First, the government emphasizes that we give broad deference to a district court's decision to grant an ends of justice order and to its decisions to exclude delay pursuant to such

---

1. The government argues that Piasecki has conceded that the ends of justice continuance was valid as to all counts against Piasecki until December 24, 1990. Although this is not an entirely unreasonable interpretation of Piasecki's arguments, Piasecki's reply brief indicates that he did not intend such a concession. To the contrary, in this brief Piasecki argues that the ends of justice continuance ceased to have effect as to Count 1 on July 31, 1990, when this count was transferred to Judge Moody.

orders, meaning that we will not reverse such exclusions of time absent legal error unless we find an abuse of discretion or actual prejudice. With this we must agree. *See, e.g., United States v. Tanner,* 941 F.2d 574, 579 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992). Nonetheless, this issue does not turn on whether Chief Judge Sharp abused his discretion in rendering an ends of justice order or in applying this order to the counts for which he retained jurisdiction. Rather, this issue turns on whether the ends of justice order applied to counts severed and transferred to another judge, which is a question of law reviewable *de novo.*

This court has held that an ends of justice order does not *automatically* become invalid merely because circumstances change so as to make the initial rationale for rendering the continuance inapplicable. *United States v. Vega,* 860 F.2d 779, 787 (7th Cir.1988); *United States v. Carlone,* 666 F.2d 1112, 1115 (7th Cir.1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). Relying on this proposition, the government argues that the severance of the counts and the transference of the counts to Judge Moody simply constituted changed circumstances under *Vega,* meaning that the ends of justice order was valid in absence of defendant's objection or a court order to the contrary. In support of such an argument, the government points to the analysis and facts in *Vega.*

The district judge in *Vega* entered an ends of justice order in a case involving thirty-two defendants charged in a sixty-one-count indictment. The district judge entered this continuance on October 7, 1985. *Vega,* 860 F.2d at 784. And, on that date the judge indicated that rather than trying the thirty-two defendants in one trial he would conduct twenty-three separate trials; Vega was scheduled to proceed in the twenty-first trial. *Id.* at 785. About one and one-half years after the entry of this ends of justice continuance and less than two months before his scheduled trial, Vega moved for dismissal of his indictment on Speedy Trial Act grounds. *Id.* at 785.

We held in *Vega* that the changed circumstances of severance and sequential trials did not retroactively invalidate the ends of justice order, and therefore we held that the trial was brought within the Act's time limits. *Id.* at 787–88.

The government argues that the concepts of *Vega* are directly applicable to this case. We do not agree that this situation is as closely analogous to *Vega* as the government contends. *Vega* involved the severance of counts applicable to a particular defendant that were retained by the same judge. Severance and reassignment to a new judge arguably raises different questions with regard to an ends of justice order's validity, particularly once all counts applicable to a particular defendant are severed from the original indictment and reassigned to a new judge.

*Vega* stands for the proposition that an originally valid ends of justice order does not automatically cease to be valid as to any defendant simply because the judge finds it necessary to try the defendants in separate proceedings, especially when the need for bifurcated proceedings was foreseen at the time which the judge entered such an order. *See Vega,* 860 F.2d at 786. It is important to note, however, that an ends of justice order's applicability is not without its limits. That is, such an order is applicable to the proceedings in which it is entered and as to the parties before the court entering such an order, but it is obviously not applicable to persons outside these proceedings. Keeping this in mind, we cannot say that an ends of justice order will continue to apply to a defendant who was a party before the court when the court rendered the order no matter what transpires afterward. In other words, at some point a particular defendant's relation to the proceeding in which such an order was rendered may cease. At that point, although the order would continue to be valid against the parties remaining in that proceeding, the order would no longer be valid as to that defendant. For example, suppose Defendant A is before the district court under a multi-count, multi-defendant indictment in which the court enters a valid

ends of justice order. Further suppose that the government chooses to dismiss charges against Defendant A while continuing to prosecute the other defendants. If the government later reindicted Defendant A to be tried alone before another district court judge for the same crimes, the original ends of justice order would no longer apply to Defendant A to exclude time under the Speedy Trial Act because Defendant A would have become completely disassociated with the proceeding in which the order was entered after dismissal of his charges under the first indictment. Unfortunately, however, this case is not so clear because Chief Judge Sharp never dismissed the counts under the original indictment under which the ends of justice order was entered; rather Chief Judge Sharp severed and reassigned some of these counts.

We now move to the question of whether the severance and reassignment of counts in this case is more akin to a change in circumstances, meaning that the ends of justice order continued to apply to Piasecki absent some objection or court action, or whether the ends of justice order ceased to apply to Piasecki's transferred counts on either July 31, 1990, or December 24, 1990, so that the government or the court had the responsibility of otherwise assuring that the trial was brought within the Act's time limits. To decide this issue we return to *Vega*. In that case, apparently in order to assure that the defendants received fair trials, the court divided the charges under one indictment into twenty-three trials before the same judge. It is clear that the judge could only conduct one trial at a time. For this reason, any complexities with regard to any one of the severed counts under that single indictment would continue to affect the court's ability to consider the remaining counts. And, that relationship between the severed counts contributed to this court's conclusion that the original ends of justice order applied to such counts.

Keeping this in mind, we now consider the effect of the July and December severances and reassignments in this case. On July 31, 1990, Chief Judge Sharp severed

Count 1 from the original indictment and reassigned this Count to Judge Moody. This meant that Piasecki, Parton, Cyprian, and Cooper were all joined under Count 1 before Judge Moody, while each of these defendants was still before Chief Judge Sharp for numerous other counts under a single indictment. Therefore, at that point Piasecki had not become completely disassociated with the proceedings before Chief Judge Sharp in which the ends of justice order was entered. Furthermore, not only was Piasecki still associated with both proceedings after this reassignment, but the two proceedings were still related to one another. That is, Piasecki's Sixth Amendment right to be present at his criminal trials assured that Piasecki could not be tried at the same time for the counts before these respective judges. This meant that the complexities in the proceedings before Chief Judge Sharp continued to affect Count 1—the count before Judge Moody. This relationship or nexus between the two proceedings, even after severance and reassignment of Count 1, meant that the proceedings before Judge Moody did not yet have an independent course of its own; rather this course was still tied to the proceedings before Chief Judge Sharp. Accordingly, we agree that under *Vega* the ends of justice order applied to both the proceedings before Chief Judge Sharp and Judge Moody after the July 31st severance and reassignment.

Now we move to a closer question: whether the ends of justice order ceased to have any validity as to Piasecki after December 24, 1990, when *all* counts against Piasecki under the original indictment were transferred to Judge Moody. At this point, Piasecki had been completely severed from the proceedings before Chief Judge Sharp, meaning that the complexities of the proceedings before Chief Judge Sharp no longer directly affected Piasecki, at least when we look to Piasecki isolated from his codefendants. Following this reasoning, once Piasecki was disassociated from the proceedings before Chief Judge Sharp there is some argument that the ends of justice order ceased to apply to the proceedings

against Piasecki. The problem is that this analysis becomes less clear when we consider that on December 24, 1990, Piasecki was still scheduled to proceed to trial on Count 1 with codefendant Cyprian, and Cyprian was still a party to the proceedings before Chief Judge Sharp. Moreover, even if we disregard the effect of Cyprian's joinder, the apparent break in the nexus between the two proceedings does not necessarily decide the question because severance and reassignment is not the same as dismissal. Indeed, numerous procedural and substantive orders entered before severance continue to apply to a defendant after the defendant's charges are severed and reassigned to another judge, whereas these same orders would not apply after dismissal. Furthermore, some of the complexities leading to an ends of justice order are likely to apply to the transferred and reassigned counts. These factors offer some support for the government's argument that the ends of justice order did not automatically cease to apply to Piasecki on December 24, 1990. We, however, find it unnecessary to resolve this question because even assuming *arguendo* the ends of justice order ceased to apply to Piasecki after December 24, 1990, like the district court we find that the trial was brought within the Act's time limits.

In addition to excluding periods of delay pursuant to an ends of justice order, the Speedy Trial Act provides for the exclusion of other periods of delay. Indeed, Judge Moody implicitly relied on several of these exclusions when concluding that, even if the ends of justice order ceased to be effective on December 24, 1990, Cyprian's trial and the delay resulting from pretrial motions lead to enough excludable delay to assure that Piasecki's trial was brought within the Act's time limits.

The first provision relevant to this district court conclusion is 18 U.S.C. § 3161(h)(7) which excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no

motion for severance has been granted." Under this section, excludable delay of one defendant may be ascribed to an unsevered codefendant provided that the delay is reasonable. *See, e.g., United States v. Dennis,* 737 F.2d 617, 620–21 (7th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 215, 83 L.Ed.2d 145 (1984).

Second, 18 U.S.C. § 3161(h)(1)(F) excludes "any delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." This court has held that the time a district court expressly sets aside for the preparation of such motions is excludable under this section, even if no such motion is filed. *United States v. Montoya,* 827 F.2d 143, 153 (7th Cir.1987). Once a motion is filed or the period for preparing the motion has expired, the excludable delay continues until the court holds a hearing and/or until the submissions necessary for the court to reach a decision are complete. *See Henderson v. United States,* 476 U.S. 321, 328–31, 106 S.Ct. 1871, 1875–77, 90 L.Ed.2d 299 (1986). Once there has been a hearing and/or all necessary submissions are before the court so that the court has been deemed to have taken the matter under advisement, unless such a period is unreasonable, the court generally has up to thirty additional days of excludable delay to decide the motion pursuant to 18 U.S.C. § 3161(h)(1)(J).[2] *See id.*

█ Acting under the assumption, but not a finding, that the ends of justice order ceased to apply to Piasecki's proceedings before Judge Moody on December 24, 1990, we now apply these exclusions to the facts in this case. The seventy-day time limit began to run on May 30, 1990, when Piasecki was arraigned and when he made his initial court appearance. *See* 18 U.S.C. § 3161(c)(1). On this date, the magistrate judge granted Piasecki ten days to file pretrial motions. Our decision in *Montoya* makes these ten days excludable under sec-

---

**2.** 18 U.S.C. § 3161(h)(1)(J) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding con-

cerning the defendant is actually taken under advisement by the court."

tion 3161(h)(1)(F). *See Montoya,* 827 F.2d at 153. Moreover, as we indicated above, the ends of justice order at least acted to exclude time between its entry on June 25, 1990, and December 24, 1990, when all counts against Piasecki were transferred to Judge Moody.

Cyprian was joined as a codefendant with Piasecki in Count 1 until April 26, 1991. And, as we indicated above, until severance, any delay that could be reasonably excluded as to the charges against Cyprian under Count 1 was also excludable as to Piasecki so long as the time for Cyprian's trial under Count 1 had not run. *See* 18 U.S.C. § 3161(h)(7). Because Cyprian, unlike Piasecki and Parton, was never completely severed from the proceedings before Chief Judge Sharp, under our above analysis, the ends of justice order continued to apply to Cyprian's charges under Count 1 even after December 24, 1990. This means that the Speedy Trial Act never expired with regard to any of the counts against Cyprian. Cyprian went to trial for the counts before Chief Judge Sharp; this trial began on January 7, 1991, and ended on February 7, 1991. This time in trial constituted excludable delay as to Cyprian's charges before Judge Moody. *See* 18 U.S.C. § 3161(h)(1)(D).[3] And, because Cyprian was an unsevered codefendant whose time for trial had not run, this time, likewise, constituted excludable delay as to Piasecki under 18 U.S.C. § 3161(h)(7).

On March 1, 1991, Judge Moody gave Piasecki until March 15, 1991, to file additional pretrial motions. This time allotted for the filing of such pretrial motions constituted excludable delay under section 3161(h)(1)(F). *See Montoya,* 827 F.2d at 153. On March 15, 1991, Piasecki and Parton filed a joint motion to dismiss based on the Speedy Trial Act, and the government filed its response to that motion on March 21, 1991. Because the delay resulting from the filing of a motion to dismiss under the Speedy Trial Act is excludable time under section 3161(h)(1)(F), the time it took the government to respond to this motion was also excludable. *See United States v. Tedesco,* 726 F.2d 1216, 1221 (7th Cir.1984).

On March 21, 1991, Judge Moody ordered the parties to file lists of all pending motions before March 29, 1991. Piasecki filed such information on March 27, 1991, and Parton filed his list after this deadline. Considering that Judge Moody asked for these lists on the date that the government filed its response to the motion to dismiss and considering that Judge Moody referred to the pending motions in his order pertaining to the motion to dismiss, it seems that Judge Moody considered these lists of motions necessary to rule on the motion to dismiss. Accordingly, it was within the district court's discretion to consider these lists as necessary submissions, meaning, at the least, the period until March 29, 1991, when codefendant Parton should have filed his response, constituted excludable delay under section 3161(h)(1)(F). *See Henderson,* 476 U.S. at 328–31, 106 S.Ct. at 1875–77. Because the last of the necessary submissions should have been filed on March 29, 1991, we will assume that the case was taken under advisement for purposes of section 3161(h)(1)(J) at that time, and therefore the next thirty days from this point, or until April 28, 1991, could reasonably be determined to constitute excludable delay under 18 U.S.C. § 3161(h)(1)(J). *See Henderson,* 476 U.S. at 328–31, 106 S.Ct. at 1875–77.[4]

The trial in this case began on May 6, 1991. And, even assuming that Chief Judge Sharp's ends of justice order ceased to apply to Piasecki after December 24, 1990, when we subtract the above listed periods of excludable delay, it becomes clear that the district court did not abuse its discretion or otherwise err when concluding that Piasecki was tried within the

---

**3.** 18 U.S.C. § 3161(h)(1)(D) excludes "delay resulting from trial with respect to other charges against the defendant."

**4.** Other periods of excludable delay may also exist on these facts. Yet, we need not look to further periods of excludable delay in order to affirm the district court's conclusion that Piasecki's trial was brought within the time limits set forth in the Speedy Trial Act.

Act's seventy-day limit.[5] That is, the record indicates there were sixteen days of nonexcludable delay as of June 25, 1990, when Chief Judge Sharp entered the ends of justice order; fourteen days between December 24, 1990, and the beginning of Cyprian's trial on January 7, 1991; twenty-two days between the close of Cyprian's trial and the grant of time to file additional pretrial motions on March 1, 1991; and eight days between April 28, 1991, and May 6, 1991, the beginning of Piasecki's trial. This leads to a total of sixty nonexcludable days, which is within the Speedy Trial Act's seventy-day limit. We, therefore, hold that the district court did not abuse its discretion or otherwise err in concluding that after subtracting the excludable delay resulting from the ends of justice order, Cyprian's trial, and pretrial motions, the trial was brought within the Act's time limits.

Piasecki alleges two other grounds for error. First, Piasecki contends that the district court erred in failing to rule on his pretrial motion to dismiss the indictment on the basis that the RICO count (Count 1) was barred on statute of limitations grounds. Second, Piasecki contends that the district court erred in failing to rule on his pretrial motion to dismiss due to preindictment delay.

Piasecki filed his pretrial motion to dismiss on these two grounds on July 2, 1990. Chief Judge Sharp issued a memorandum addressing this motion on November 30, 1990. With respect to Piasecki's statute of limitations claim, Chief Judge Sharp explained:

> [T]his court does not believe that the indictment on its face is subject to being dismissed by reason of the applicability of the five-year statute of limitations. However, it is permissible for [Piasecki] and other defendants to raise the statute of limitations defense as part of the defense on the merits during the trial proceedings in this case.

And, with respect to appellant's claim of preindictment delay, Chief Judge Sharp explained:

> Normally, questions of pre-indictment delay are fact-oriented. Thus, this Judge's normal practice of holding such motions under advisement until after a verdict is reached by the jury will be adhered to. If a guilty verdict or verdicts are returned, [Piasecki] will be afforded an additional opportunity to present additional evidence on the issue and the court will rule specifically and in writing on it.

Chief Judge Sharp then ruled that Piasecki's motion would be taken under advisement "until after trial of this case."

In this ruling, Chief Judge Sharp placed the burden on Piasecki to renew these claims and put forth the evidence necessary to resolve these claims during or after the trial. Trial began in this case on May 6, 1991, and the jury returned its verdict on May 16, 1991. Piasecki was then sentenced on July 19, 1991. Piasecki did not raise the statute of limitations or preindictment delay issues during this time. In addition, Piasecki did not seek an opportunity to present additional evidence on these issues.

In light of Chief Judge Sharp's prior ruling, Piasecki's failure to raise the statute of limitations issue during this time constitutes waiver.

■ When alleging a due process claim based on preindictment delay, the defendant bears the burden of making a threshold showing that the delay caused actual and substantial prejudice. *See, e.g., United States v. Fuesting,* 845 F.2d 664, 669 (7th Cir.1988). In order to meet this threshold showing, the defendant must make specific and concrete allegations of prejudice which are supported by the evidence. *Id.; United States v. Antonino,* 830 F.2d 798, 805–06 (7th Cir.1987). The summary allegations in Piasecki's motion for dismissal do not meet these specificity requirements, and Piasecki's failure to ask

---

**5.** Time is computed under the Speedy Trial Act in the same manner as under Fed.R.Crim.P. 45(a), meaning that we count the day of the event from which the time runs but do not count the last day of such event. *See United States v. Montoya,* 827 F.2d 143, 147 n. 4 (7th Cir.1987).

for leave to produce such additional evidence after the trial constituted waiver of this issue.

### III.

For the above reasons, we affirm Piasecki's conviction.

AFFIRMED.