**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mozella BASKIN–BEY and Doris Groth,**
**Defendants–Appellants.**

Nos. 93–3452, 93–3648.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1994.

Decided Jan. 17, 1995.

Lance C. Malina, Asst. U.S. Atty., Crim. Div. (argued), Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Robert A. Korenkiewicz, Chicago, IL (argued), for Mozella Baskin–Bey.

Paul A. Wagner, Chicago, IL (argued), for Doris L. Groth.

Before POSNER, Chief Judge, COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Doris Groth and Mozella Baskin–Bey were both convicted of conspiring to possess cocaine with intent to distribute. Groth also was convicted of attempting to possess cocaine with intent to distribute. The district

court sentenced them each to 63 months in prison. Groth and Baskin–Bey appeal their convictions, and we affirm.

## I. Background

In early April 1992, Groth called Wayne Parrish, from whom she had bought cocaine before. Groth told Parrish she wanted to buy a kilogram of cocaine. But unfortunately for Groth, since she had last bought from Parrish, he had become a government informant, and he promptly informed the Drug Enforcement Administration of Groth's request. The DEA told Parrish to proceed as if he were willing to sell Groth the cocaine, and DEA agents prepared to monitor the deal.

On April 2, Parrish called Groth to arrange the sale she had requested. They agreed to meet that afternoon near Groth's apartment building. Meanwhile, Baskin–Bey had become involved in the proposed sale. That same day, she called a friend, Eddie Murphy, and asked him to drive her to pick up cocaine. She told Murphy she would receive a quarter kilogram from the deal and that she would give him two ounces if he helped her.

Parrish and one of his DEA contacts, Agent George Ohlin, parked at a grocery store a block away from Groth's apartment. From there Parrish called Groth and said he was ready to complete the transaction. Groth said she would call him back before long. The DEA taped that conversation as it had other conversations Groth had with Parrish. Meanwhile, DEA agents watched Groth's apartment building until Baskin–Bey and Murphy drove up. Groth came out of the building and talked to Murphy and Baskin–Bey on the sidewalk. Murphy went into the lobby of the building and stayed there; Groth and Baskin–Bey went upstairs and Groth returned Parrish's earlier call. Groth discussed price and quantity terms with both Parrish and Agent Ohlin; they agreed to sell Groth a kilogram of cocaine. Half the purchase price was to be paid in cash when the cocaine was handed over and the rest of the money was to be due in two days.

Groth and Baskin–Bey then went back downstairs. Groth asked Murphy to drive her to the buy site; Baskin–Bey remained in the lobby of the apartment building. Murphy and Groth drove to where Parrish and Ohlin were waiting, and Murphy parked his car next to Parrish's. Groth got into Parrish's car, and they discussed the deal and the possibility of future deals. Groth then produced approximately $10,000 in cash, enough for the "down payment" on the kilogram. Ohlin then led Murphy to another car, supposedly to receive the cocaine, and arrested him when he got in the back seat. Other agents simultaneously arrested Groth and Baskin–Bey.

Groth, after the agents advised her of her rights, gave Ohlin permission to search her apartment, where agents found more cocaine, divided into small packets. Groth, Baskin–Bey, and Murphy were all indicted; Murphy pled guilty before trial and testified against Groth and Baskin–Bey at their joint trial.

## II. Analysis

### A. Speedy Trial Act

Baskin–Bey was arraigned on September 21, 1992; Groth was arraigned on October 8, 1992. At first, pre-trial procedures went smoothly. The judge set schedules for pre-trial motions for both defendants. He made defense motions due October 13, but extended that to October 20 upon Groth's request for extra time. The judge gave the government until November 3 to respond to Groth's and Baskin–Bey's pre-trial motions, and he set a tentative trial date of November 30.

Baskin–Bey filed three pre-trial motions before the due date. The government filed its response to Baskin–Bey's motions on November 2. Groth had already filed several motions in August, to which the government had responded. On November 5, at the request of the district court, all pre-trial motions were assigned to a magistrate judge for consideration.

From here, the pre-trial proceedings hit a snag. On their way to the magistrate judge, Baskin–Bey's and Groth's motions disappeared into the void. The record does not show that anybody ever figured out where they went. So as far as the district court knew, the magistrate judge was considering

them, but the magistrate had never heard of their existence.

Meanwhile, at a November 24 status hearing, Baskin–Bey's counsel asked the district judge to delay the trial because he had a conflict with both the scheduled date and with the back-up date of December 21. In response, the court vacated the scheduled date and set a status hearing for February 11, 1993. On January 13, the district court on its own initiative set the trial for April 16. At the status hearing on February 11, counsel noted that the magistrate judge had not responded yet to the pre-trial motions. The district judge told the parties to ask the magistrate judge about the motions. Baskin–Bey's counsel again requested that the trial date be pushed back because of a conflict, so the district judge set another status hearing, to discuss the trial date, for April 9.

When the parties inquired about the motions, the magistrate judge learned of them for the first time. She therefore asked for copies of the motions, received them February 18, and ruled on them March 8. Because of the delay in that ruling, Groth and Baskin–Bey both moved, before trial, that their indictments be dismissed under the Speedy Trial Act. The district judge denied their motions.

■ The Speedy Trial Act provides that no more than seventy days may elapse between arraignment and the start of trial. 18 U.S.C. § 3161(c)(1). However, for various reasons, the district court may exclude time in calculating the seventy-day limit; thus, time that is more than seventy total days may actually elapse between arraignment and trial. 18 U.S.C. § 3161(h). Therefore we must calculate when the speedy trial clock began running, when it stopped running, and what parts of the time elapsed are excludable for speedy trial purposes. We review the district court's denial of Speedy Trial Act motions *de novo* when calculation of time is at issue. *United States v. Cheek,* 3 F.3d 1057, 1061 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1055, 127 L.Ed.2d 376 (1994).

■ The speedy trial clock for both Baskin–Bey and Groth began to run at Groth's arraignment, October 8, because she was the last co-defendant arraigned. *Henderson v. United States,* 476 U.S. 321, 323 n. 2, 106 S.Ct. 1871, 1873 n. 2, 90 L.Ed.2d 299 (1986). At Groth's arraignment, the court excluded time for briefing of pre-trial motions, i.e. until November 3. All time before November 3 was excludable because the judge explicitly allotted it for preparation related to a defendant's pre-trial motions. *United States v. Montoya,* 827 F.2d 143, 153 (7th Cir.1987). Baskin–Bey argues that the time the judge explicitly allotted for the government's response, from October 20 to November 3, is not excludable. However, time the judge gives for the government's response is automatically excludable up to the scheduled date of the response. *United States v. Thomas,* 788 F.2d 1250, 1259 (7th Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 121 (1986); *see also United States v. Piasecki,* 969 F.2d 494, 500 (7th Cir.1992) (holding that speedy trial clock only starts to run when all necessary submissions related to pre-trial motions have been made); *United States v. Latham,* 754 F.2d 747, 752 n. 4 (7th Cir.1985) (holding excludable time explicitly allotted for government's response to defendant's pre-trial motions).

■ No time elapsed on the speedy trial clock after February 11. At the February 11 hearing, after Baskin–Bey's counsel asked to delay the trial yet again to preserve continuity of counsel, the government moved to exclude the time covered by the proposed continuance. Baskin–Bey and Groth had no objection, so the court excluded the time. Baskin–Bey now complains the court made no findings as to why an exclusion was necessary, as the Speedy Trial Act requires. *See* 18 U.S.C. § 3161(h)(8)(A). However, she has forfeited her argument by her failure to object to the exclusion before the trial court. *United States v. Asubonteng,* 895 F.2d 424, 427 (7th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). Furthermore, the reasons for the exclusion are clear from the record—the judge acted in the interests of justice to allow Baskin–Bey to keep the same counsel. *See United States v. Leiva,* 959 F.2d 637, 640 (7th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 2372, 124

L.Ed.2d 277 (1993) (holding that record showed adequate findings to support § 3161(h)(8)(A) exclusion). Anyway, it is unfair of Baskin–Bey to ask that the trial date be delayed to suit her, implicitly agree to the government's request that time be excluded because of her request, and then try to sandbag the government by insisting that the time be counted against the · speedy trial clock. *See United States v. Kucik,* 909 F.2d 206, 211 (7th Cir.1990), *cert. denied,* 498 U.S. 1070, 111 S.Ct. 791, 112 L.Ed.2d 853 (1991) (holding that defendant may not implicitly agree to government's request to exclude time and later ask to count time against speedy trial calculation).

Thus, all time through November 3, and all time after February 11, is indisputably excluded from the Speedy Trial Act calculation. We are left, then, with the 99–day period between November 3 and February 11, during which the district court thought the magistrate judge was considering the pre-trial motions.

■ The district court did not explicitly exclude any of those 99 days. However, much or all of the time during which a judge is considering pre-trial motions is excludable from the speedy trial calculation. Where the judge is only considering one pre-trial motion, thirty days of the time the motion is under advisement is excludable. 18 U.S.C. § 3161(h)(1)(J); *United States v. Tibboel,* 753 F.2d 608, 611 (7th Cir.1985). But where the judge is considering multiple pre-trial motions, the thirty-day limit does not apply. Instead, a time period constituting "reasonable promptness" is excluded, i.e., some amount of time greater than thirty days. *Tibboel,* 753 F.2d at 612.

■ We need not decide exactly how much time would have been "reasonable promptness" for the disposition of Baskin–Bey's three motions. Thirty days is *per se* minimum reasonable promptness for any number of pre-trial motions, and when those thirty days are subtracted from the 99 days we have not already found excluded, the total is sixty-nine days. Because the Speedy Trial Act allows seventy unexcluded days to elapse before a violation occurs, no violation occurred in the handling of Baskin–Bey's and Groth's proceeding.[1]

### B. Sufficiency of the Evidence

■ Baskin–Bey appeals the sufficiency of the evidence of her conspiracy conviction. She faces an uphill battle. We will reverse a conviction on that ground only if no rational jury could have found Baskin–Bey guilty. *United States v. Fort,* 998 F.2d 542, 545 (7th Cir.1993). "[A] defendant has a heavy burden in challenging the sufficiency of the evidence with regard to his participation in a conspiracy." *United States v. Gutierrez,* 978 F.2d 1463, 1468 (7th Cir.1992). When reviewing the conviction, we may accept any adequate evidence, including circumstantial evidence, as support for a conviction. *United States v. Durrive,* 902 F.2d 1221, 1229 (7th Cir.1990).

■ A criminal conspiracy is "an agreement to commit a crime," *United States v. Zarnes,* 33 F.3d 1454, 1465 (7th Cir.1994); here, the crime is possessing cocaine with the intent to distribute. To support a conspiracy conviction, the government must prove that the defendant knew of the agreement and intended to join it to further its criminal design and purpose. *Id.* The jury may, of course, infer the existence of a conspiracy from the evidence presented. *Id.*

■ Baskin–Bey's argument is groundless: ample evidence supports the jury's conclusion of Baskin–Bey's guilt. Baskin–Bey told Murphy that she and Groth planned to buy cocaine, and she asked for Murphy's help in the planned transaction. Baskin–Bey went to Groth's apartment with Murphy; only when Baskin–Bey had arrived

---

1. Baskin–Bey argues that because the magistrate judge, once she was actually given the motions, only took 19 days to rule on them, 19 days must be the time excludable as "reasonable promptness" from the speedy trial calculation. But it is not the minutes, hours, or days the judge actually spends on deciding pre-trial motions that constitute the period of excludable "reasonable promptness." We will not encourage inquiry into the minutiae of a judge's internal schedule. For our purposes here, calculation of time is mechanical, and as discussed, we have held that thirty days of the time after motions are ready for consideration are necessarily excludable.

and had gone upstairs with her did Groth return Parrish's earlier call and finalize plans for the sale. During that recorded conversation, Groth discussed with a female voice in the background exactly how much cocaine they would buy and what the terms would be, eventually agreeing to buy a half kilogram with cash and a half kilogram on credit. While Groth went to complete the sale, Baskin–Bey waited in the lobby of Groth's apartment building, keeping the keys to Groth's apartment with her. There was also sufficient evidence of intent to distribute the cocaine. Eddie Murphy testified that Baskin–Bey had promised him two ounces of cocaine for his help. Additionally, the large amount of cocaine supports an inference of intent to distribute. *United States v. Maholias,* 985 F.2d 869, 879 (7th Cir.1993). The evidence before the jury more than adequately supported the finding of guilt.

Baskin–Bey argues heatedly that her relationship with Groth was merely that of "buyer-seller," and that such a relationship cannot support a conspiracy conviction, under *United States v. Lechuga,* 994 F.2d 346 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). *Lechuga* held that mere evidence of one sale of narcotics, without more, was inadequate to support a conviction of the buyer and seller for conspiracy to distribute narcotics. *Id.* at 350.

Baskin–Bey argues against a straw man—*Lechuga* is not relevant to her crime. She and Groth doubtless had agreed to parcel out the cocaine among themselves. We don't know exactly what their plan was, which is not very surprising, considering that both denied their guilt. But precisely how they had decided to dispose of the kilogram between themselves, or with Murphy, was a side transaction. The transaction at issue was the purchase that resulted from Groth's and Baskin–Bey's conspiracy to buy a kilogram of cocaine. In that proposed transaction they were *both* buyers, even though Groth was the one who actually handled the money. The government was the putative seller. Therefore, because Groth and Baskin–Bey were on the same side of the relevant transaction, *Lechuga* is completely inapplicable.[2]

No contention of either Groth or Baskin–Bey has any merit. Therefore, we AFFIRM their convictions.

---

2. For the same reason, we reject Baskin–Bey's contention that the trial court erred in refusing to give the jury instructions about buyer-seller relationships in drug transactions. Baskin–Bey was not entitled to have the jury receive any instruction she chose. She was only entitled to a particular instruction when there was some evidence to support the theory behind the instruction. *United States v. Townsend,* 924 F.2d 1385, 1414 (7th Cir.1991). No evidence supported Baskin–Bey's theory in relation to the crime charged; thus, not only would the instruction have been so much surplus verbiage, it might well have misled the jury.