**UNITED STATES of America**

v.

**Santiago CASTILLO–PACHECO and Fernando Vizcaino, Defendants.**

**No. Crim.98–10275–PBS.**

United States District Court,
D. Massachusetts.

May 10, 1999.

Peter Parker, Boston, MA, for Santiago Castillo, defendant.

Paul V. Kelly, Foley, Hoag & Eliot, Boston, MA, for Fernando Vizcaino, defendant.

Michael J. Pelgro, U.S. Attorney's Office, Boston, MA, for U.S.

## *MEMORANDUM AND ORDER*

SARIS, District Judge.

Both defendants have filed motions to dismiss pursuant to the Speedy Trial Act, ("STA"), 18 U.S.C. § 3161 *et seq.* The government has filed an opposition. After hearing, the motions are ***DENIED.***

### DISCUSSION

The Speedy Trial Act requires that a trial "shall commence within seventy days" from the time of indictment or initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1); *see also United States v. Cordero,* 668 F.2d 32, 45 (1st Cir.1981). Otherwise, "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). The 70–day period can be extended, however, by certain "periods of delay" which are specifically excluded from the "day count."

#### 1. *Castillo–Pacheco.*

The threshold issue is when Castillo–Pacheco's speedy trial clock began to tick. The STA provides that the government must bring a criminal defendant to trial no more than seventy days after the later of

the filing date of the information or indictment or the date on which the criminal defendant first appears before a judicial officer of a court in which the charge is pending. *See* 18 U.S.C. § 3161(c)(1).

■ Defendant contends the clock began on the date of the indictment because it followed the initial appearance before the magistrate judge of this district. The government contends the date of arraignment starts the clock. A pre-indictment initial appearance constitutes an appearance before a judicial officer of the court in which such charge is pending for the purpose of determining the last occurring date to trigger the seventy-day STA period. *See United States v. Carrasquillo,* 667 F.2d 382, 384 (3rd Cir.1981). Here, the arrest and initial appearance on the charges underpinning the indictment occurred on August 7, 1998. The indictment was filed on September 3, 1998. Therefore, the STA began to tick on September 4, 1998. *See United States v. Barnes,* 159 F.3d 4, 10 (1st Cir.1998) (noting that time under the STA begins to accrue the day after the triggering event). The parties all agree that the clock stopped on March 18, 1998, when the government filed its motion to exclude time. For purposes of the Speedy Trial Act, this period of September 4, 1998, to March 17, 1998, contains 195 days.

The period from September 4, 1998, to October 2, 1998, is excluded. The government filed a motion to exclude time on September 8, 1998, from August 6, 1998, to the date of the motion. This motion was allowed on October 2, 1998. This constitutes 29 days of excludable time.[1]

■ The period from October 3, 1998 to November 5, 1998, is excluded. On September 30, 1998, defendant was arraigned, and a detention hearing was scheduled on October 16, 1998. The government had filed a motion for detention on August 7,

1998, the date of the initial appearance following arrest. On August 21, 1998, defendant voluntarily agreed to detention without prejudice to his right to contest the government's motion for pretrial detention at a later time. (Magistrate Docket 15, p. 2). According to the magistrate judge, defendant requested the court to "reopen" the issue of detention at his arraignment. (Magistrate Docket 15, p. 2). The parties debate the vitality of the motion to detain after defendant voluntarily agreed to detention on August 21, 1998. However, that dispute is immaterial because the period of time prior to the arraignment was deemed excludable by the court on October 2, 1998. Because the motion was reopened on September 30, 1998, it stopped the clock until decided. The hearing on October 16, 1998, was continued, although the record is unclear as to the reason. On October 26, 1998, the prosecutor and defense attorney filed a joint motion to continue the detention hearing, again stating: "Counsel for Defendant is currently on trial in Worcester for *U.S. v. Carrozza.* Counsel is unable to break from trial until November 3, 1998." On November 3, 1998, the detention hearing was held, and the Magistrate Judge issued her Memorandum and Order on November 5, 1998. The period of exclusion (October 3, 1998 to November 5, 1998) is 34 days.[2]

■ The period from November 5, 1998 to November 25, 1998 is excludable. On November 5, 1998, a superseding indictment was returned as to defendants Castillo–Pacheco and Vizcaino. The indictment was sealed upon the request of the government. The superseding indictment adding Vizcaino as a defendant did not restart Castillo–Pacheco's STA clock because it was based on the original charges. *See United States v. Santiago–Becerril,* 130 F.3d 11, 19 (1st Cir.1997); *United States v.*

---

1. The calculation does not include days prior to the date upon which time under the STA began to accrue.

2. September 30, 1998, to October 2, 1998, was already excluded in the earlier calculation.

58

*Mitchell,* 723 F.2d 1040, 1045 (1st Cir. 1983).

■ Pursuant to 18 U.S.C. § 3161(h)(6), the time from the filing of a superseding indictment to a defendant's subsequent re-arraignment on the superseding indictment is excludable. *See, e.g., United States v. Van Someren,* 118 F.3d 1214, 1219 (8th Cir.1997) (involving a superseding indictment similar to the original indictment); *United States v. McKay,* 30 F.3d 1418, 1420 (11th Cir.1994) (holding that the filing of a superseding indictment "has the same effect as dismissing an original indictment and filing a new indictment"); *United States v. Kelly,* 45 F.3d 45, 47–48 (2d Cir.1995) (same). On November 18, 1998, the government moved that the superseding indictment be unsealed, the co-defendant Vizcaino was arrested and the government moved to detain Vizcaino.[3] Accordingly, I exclude November 5, the day the indictment was superseded, to November 25, 1998 when the memorandum and order on the motion to detain Vizcaino was issued. This is 20 days of excludable time altogether. Pursuant to § 3161(h)(7), time properly excluded for Vizcaino tolls the STA clock for Castillo as well. *See Santiago–Becerril,* 130 F.3d at 19.

The period from November 26, 1998, to December 8, 1998, is excludable. At the arraignment, the magistrate judge *sua sponte* ordered that automatic discovery pursuant to L.R. 116.1 be filed forthwith, defendant to file pretrial motions by December 9, 1998, and the government to respond by December 18, 1998. While defense counsel did not request time to file discovery motions, neither did he object.

The government claims that this time to prepare the discovery motions is excludable under *United States v. Jodoin,* 672 F.2d 232 (1st Cir.1982) (Breyer, J.), which held that time to prepare a motion to suppress was excludable:

Whether or not this additional delay fits within the language of § 3161(h)(1)(F), which excludes "delay resulting from any pretrial motion from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," it should be excluded. Clause (F) is but an illustration of the general language of § 3161(h)(1), which excludes "any period of delay resulting from other proceedings concerning the defendant." That this language is meant to cover more than the examples provided in clauses such as (F) is made clear by the next few words: "including but not limited to," and by the Senate's Report which states, "the list (of proceedings concerning the appellant) is not intended to be exhaustive. It is representative of procedures of which a defendant might legitimately seek to take advantage for the purpose of pursuing his defense."

*Id.* at 238 (quoting S.Rep. No. 212, 96th Cong., 1st Sess. 10 (1979)). The majority of circuits has agreed that delay attributable to the preparation of pretrial motions is excludable under § 3161(h)(1). *See United States v. Fields,* 39 F.3d 439, 444 n. 3 (3rd Cir.1994) (describing the circuit split).

Defense counsel argue that *Jodoin* is not controlling because, there, defense counsel had orally moved for time to file his motion to suppress, whereas, here, the magistrate judge gave him time to prepare the discovery motions *sua sponte.* Again, there is a circuit split on this question. The Seventh Circuit has squarely held that the time a district court *sua sponte* expressly sets aside for the preparation of pretrial motions is excludable under Section 3161(h)(1). *See United States v. Montoya,* 827 F.2d 143, 153 (7th Cir.1987) ("The allowance of a reasonable time for the consideration, possible preparation,

**3.** The defendant was arraigned on the superseding indictment on March 25, 1999, a week after the STA clock stopped ticking for purposes of this motion. This is an unreasonable period of time from the filing of the superseding indictment to rearraignment, and the government does not press me (too hard) to exclude this time period.

and filing of pretrial motions is routinely and necessarily allowed without a specific request."); *United States v. Piasecki*, 969 F.2d 494 (7th Cir.1992) (same); *cf. United States v. Van Someren*, 118 F.3d 1214, 1217 (8th Cir.1997) (excluding the time the court gave the government to decide whether to retry the defendant under § 3161(h)(1)(F)).

The Ninth Circuit is internally divided on the subject. *Compare United States v. Hoslett*, 998 F.2d 648, 656 (9th Cir.1993) (holding that a "district court's standard practice of setting deadlines, *sua sponte*, for the filing of pretrial motions does not amount to 'expressly designated' excludable pretrial motion preparation time under section 3161(h)(1)"), *with United States v. Lewis*, 980 F.2d 555, 564 (9th Cir.1992) (excluding the time a trial judge expressly designates, *sua sponte*, for preparation of motions), *and Hoslett*, 998 F.2d at 660–61 (Kozinski, J., dissenting) ("An order by a district court giving the parties time to prepare pretrial motions is quite clearly an 'express designation' of time for that purpose.").

■ Reading the tea leaves in First Circuit case law persuades me that the time specifically designated by the magistrate judge for the filing of discovery motions is excludable time even in the absence of an express request from the defendant. In *Jodoin*, the trial court *sua sponte* continued the trial a week under § 3161(h)(8)(A). The First Circuit held that the week was excludable time because defense counsel did not object, stating: "But, the record, showing no objection, strongly suggests that, once appellant lost his motion for dismissal, it simply suited the convenience of those involved that the trial take place a week later." *Jodoin*, 672 F.2d at 238. The First Circuit has also recognized "informal" and "implied" requests as pretrial motions. *See Barnes*, 159 F.3d at 11. This commonsense, nonformalistic approach suggests that the First Circuit would adopt the Seventh Circuit's analysis by not distinguishing between time for

preparation of pretrial motions which are orally requested by defendants and time which the court *sua sponte* specifically designates, without objection by defense counsel. Significantly, no one argues that this time set was excessive, or that time for filing discovery motions would not have been requested, and excluded, as is the regular practice before magistrate judges. Accordingly, I exclude 13 days.

The period from December 9, 1998, to January 15, 1999, is excludable. On December 9, 1998, defendant Vizcaino filed a motion for the revocation of detention, motions for discovery, and a motion for exculpatory evidence. This court denied the motion for revocation on January 7, 1999. On December 16, 1998, the government filed its response to the discovery motions. On February 2, 1999, the magistrate judge ruled on the discovery motions. However, pursuant to § 3161(h)(1)(J), only 30 days are excludable. Therefore, the speedy trial clock began to run again on January 16, 1999. This involves 38 days of excludable time.

The bean-counting for defendant Castillo–Pacheco is as follows. Of the 195 days, the number of excludable days is 134. Accordingly, there are 61 non-excludable days. Nine days are left on the STA clock.

### 2. *Vizcaino.*

Defendant Vizcaino's speedy trial clock began ticking on November 19, 1998, the day after he had his initial appearance before the magistrate judge and stopped on March 17, 1999, the day before the government filed its motion to exclude time. This is 119 days. For the reasons stated above, all the time between November 19, 1998, and January 15, 1999, is excludable. To recap, on November 18, 1998, the government moved for detention, and on November 25, 1998, the magistrate judge ordered him detained. On November 24, 1998, the magistrate judge specifically designated time for preparation of pretrial motions by December 9, 1998.

Discovery motions were filed on that date and opposed on December 16, 1998. Although the court ruled on the discovery motions on February 2, 1999, only a time period of thirty days was excludable. Therefore only up to January 15, 1999, was excludable. Altogether, there were 58 days of excludable time. The speedy trial clock began reticking on January 16, 1999. When it stopped on March 17, 1999, there were sixty-one days of non-excludable time, nine days shy of the speedy trial deadline.

### 3. *Continuance of Scheduling Conference.*

One disputed issue involves the continuance of a scheduling conference on November 18, 1998, by the deputy clerk.[4] On September 16, 1998, the trial court issued a notice to set up the conference at 2:00 p.m. to schedule the trial. On the morning of November 18, 1998, defense counsel called up the courtroom deputy to continue the conference because he was still involved in a complex case (the same *Carrozza* case that had necessitated the continuance of the detention hearing) which was being tried in the afternoons in Worcester, an hour away from Boston. Defense counsel asked for a continuation until after the trial was over. The courtroom deputy accommodated the attorney's oral request for a continuance, pursuant to L.R. 40.2(A)(1) (providing that trials trump hearings) but did not insist that he file a motion for a continuance as required by L.R. 7.1 and 40.3. The trial ended on January 12, 1999 when the jury came back with a verdict which was covered in the press. Defense counsel never informed the court that the trial was over, and never sought a new date for the scheduling conference. He insists the court should have seen the press coverage and *sua sponte* rescheduled the conference.

The Third Circuit resolved this dispute when it held, in analogous circumstances, that section 3161(h)(8)(A), which refers to "a continuance granted by any judge on his own motion or at the request of" the attorneys, suggests that Congress intended the trial judge, not the deputy clerk, to determine whether a continuance is warranted. *See Carrasquillo*, 667 F.2d at 387–88. *Accord United States v. Heller*, 957 F.2d 26, 29 (1st Cir.1992). In *Carrasquillo*, Judge Higginbotham wrote a concurring lament:

> I am certain that no one could have been more shocked with the motions to dismiss than the deputy clerk who tried to accommodate counsel's original request. I had always hoped that Leo Durocher's admonition that "nice guys always lose" was limited to the sport of baseball, but perhaps this case illustrates that with certain counsel "nice" deputy clerks who try to be thoughtful and accommodating can unfortunately and unintentionally cause a case to be "lost" when a lawyer subsequently repudiates the very accommodation he had originally sought.

*Id.* at 391 (Higginbotham, J., concurring).

 This is a particularly frustrating situation because there is no doubt I would have allowed a motion to continue the scheduling conference until after defense counsel's complex, lengthy and difficult case in Worcester was over. The Local Rules—as well as the basic rules of com-

---

4. I make these factual findings after an evidentiary hearing in which defense counsel and the deputy clerk testified. I find the deputy clerk credible because (1) he has a specific memory of the conversation with defense counsel; (2) his contemporaneous records support his memory; and (3) defense counsel, in fact, had a conflict that day in Worcester. Defense counsel, who does not have a specific memory of the conversation, suggests that the deputy clerk *sua sponte* con-

tinued the hearing because, as a matter of serendipity, the co-defendant was arrested that day. This is unlikely because defense counsel went directly from his home to the Worcester Courthouse that morning and, therefore, the deputy clerk would not have had the means to contact him. In any event, I find that defense counsel, in good faith, sought continuance of the scheduling conference, and the deputy clerk, in good faith, granted it.

mon courtesy to attorneys working flat-out in this Court—require this order of precedence, particularly when the parties were informing the Court that the case at bar was going to be plead out. Nonetheless, once the STA clock has stopped, this Court can not retroactively *nunc pro tunc* make the requisite ends-of-justice finding. *See Barnes*, 159 F.3d at 13 (holding that the telephonic grant of a continuance "of which there is no contemporaneous written or oral record" fails to comply with the Act).

#### 4. *Plea Bargaining.*

The last issue involves plea bargaining. The government claims it was sandbagged because both defense attorneys were communicating by word and deed that defendants were likely to plead guilty. Although both defense counsel were engaged in plea negotiations,[5] there was no evidence that there was a plea agreement to which either defendant and/or defense counsel agreed or an agreement to waive the Speedy Trial Act.

This last parry is the so-called *Pringle* chip. In *United States v. Pringle*, 751 F.2d 419, 434 (1st Cir.1984), involving the waiver of STA rights, the First Circuit held:

> Where it is the conduct of the defendant or defense counsel which creates the delay, it is only the public's interest in a speedy trial which has been violated. Using the sanction of dismissal for such delay would be counterproductive because, even though it might keep the courts and the prosecution more on their toes, the possibility of dismissal would serve as a powerful incentive for defendants and defense counsel to create delay.

*Id.* Under this limited unclean hands exception to the general rule that defendants may not elect to waive the protections of the STA, a defendant cannot lull the prosecution and court into a "false sense of security only to turn around later and use the waiver-induced leisurely pace of the case as grounds for dismissal." *Id.; see also Barnes*, 159 F.3d at 14. The First Circuit has not yet considered the appropriateness of excluding a period of time for ongoing plea negotiations. *See Santiago–Becerril*, 130 F.3d at 20 n. 4. The government urges the court to treat the statements of the defense counsel as the kind of lullaby that would fall within the *Pringle* exception. There is support for this argument in other circuits. *See, e.g., United States v. Bowers*, 834 F.2d 607, 609–610 (6th Cir.1987) (holding that the plea bargaining process can qualify as one of many "other proceedings" pursuant to section 3161(h)(1);) *Montoya*, 827 F.2d at 150.

I need not address the government's argument it was sandbagged by the statements of defense counsel that defendants were going to plead because of my STA calculation.[6] If, however, this tallying were to be incorrect, *Pringle* does raise an alternative basis for my conclusion that the STA was tolled while the negotiations were active through January, 1999.

#### ORDER

The defendants' motions to dismiss (Dockets 46, 47) are ***DENIED.*** The government's second motion to exclude time (Docket 39) is ***ALLOWED.*** The first motion (Docket 38) is ***DENIED*** as moot.

---

5. An affidavit of the Assistant United States Attorney detailed these plea negotiations. However, I have ordered the affidavit sealed and do not repeat the confidential matters.

6. Pursuant to the factors set forth in 18 U.S.C. § 3162(a)(2), these circumstances would also militate strongly toward a dismissal without prejudice. This is particularly true since there was minimal delay, and no actual prejudice. The offense of drug trafficking is a serious one.