**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Axel HERRERA, Anthony Velazquez, Hector Gonzalez, Antonio Crespo, Carmello Moctezuma and Luis Velazquez, Defendants–Appellants.**

Nos. 94–1966 to 94–1968 and
94–2007 to 94–2009.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1995.

Decided April 28, 1995.

Order Modifying Opinion on Denial
of Rehearing May 23, 1995.

Kaarina Salovaara, Gil Soffer (argued), Office of the U.S. Atty., Criminal Div., Barry Rand Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

Kevin E. Milner (argued), Chicago, IL, for Axel Herrera, Hector Gonzalez.

James J. Cutrone (argued), Chicago, IL, for Anthony Velazquez.

Anthony Pinelli (argued), Chicago, IL, Michael T. Norris, Schaumburg, IL, for Antonio Crespo, Carmello Moctezuma.

Dennis A. Giovannini, Herbert L. Goldberg (argued), Giovannini & Goldberg, Chicago, IL, for Luis Velazquez.

Before CUMMINGS and FLAUM, Circuit Judges, and PAINE, District Judge.[*]

PAINE, District Judge.

This is an appeal of a final judgment of a United States District Court within this court's jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

### Facts

All of the Defendants[1] were charged in Count I of the Indictment with conspiring to possess with intent to distribute multi-kilogram quantities of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. Count II of the indictment charged Defendants Herrera, Gonzalez, Anthony Velazquez, and Luis Velazquez with using a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and (2). In Counts III and IV, Defendants Anthony Velazquez and Gonzalez were charged with possessing a firearm despite prior felony convictions, in violation of 18 U.S.C. §§ 922(g)(1) and (2). After a six day trial, the jury returned a guilty verdict against all Defendants on Count I. The jury returned a verdict of not-guilty on all of the remaining counts of the indictment.

In 1992, another drug defendant (the "informant") entered into a plea agreement with the government wherein he agreed to work undercover. In 1993, acting in his undercover capacity, the informant contacted Defendant Herrera, with whom he had previously engaged in drug deals, in order to arrange a cocaine transaction.

According to the deal, the informant would supply 5 kilos to Herrera for $17,500 per kilo, and Defendant Herrera would broker the cocaine to his buyers. Later, the informant asked Herrera if he could move 15 kilos of cocaine and Herrera said that he could.

On March 10, 1993, the informant and Herrera met at Defendant Anthony Velazquez's residence where they were met by Defendant Gonzalez and proceeded to Defendant Gonzalez's house. While at Gonzalez's house, the guests consumed cocaine and discussed the transaction. Also while at Gonzalez's house, an unidentified man came to the door and gave a bundle of money to Gonzalez. The next day, the informant engaged in a taped telephone conversation with Herrera and informed him that he and his supplier (an undercover DEA agent) had 15 kilos of cocaine to sell. Defendant Herrera said that the deal would have to be done in two transactions. In another taped conversation, Herrera stated that he would get his buyers together at Anthony Velazquez's house where they would wait for the money; the details of the deal were arranged.

That evening, the informant and the agent met Herrera and Anthony Velazquez at Herrera's house and drove to Velazquez's apartment. On the way there, the Defendants said they could have sold about 50 kilos during the previous week and that they wanted this deal to be done in one transaction. When they arrived at the apartment, they learned that the buyers and the money had not yet arrived. The deal was postponed until the next day.

The next day the informant and Herrera had five taped telephone conversations dur-

---

[*] Hon. James C. Paine, of the Southern District of Florida, sitting by designation.

1. Both in its brief and at oral argument, the government conceded that Defendant Moctezuma's arrest was illegal, and that all subsequent statements made by him to the government thereafter were both tainted by the illegal arrest and played a prominent role in the trial against him. Accordingly, the government has agreed that an appellate bond be issued immediately, pending its decision whether to retry him. The government further confesses that its disposition of the case with respect to Moctezuma renders all remaining arguments advanced by this Defendant to be moot. There is no basis for this court to disagree with the government's confession of error as to this Defendant and, therefore, this opinion does not address his appeal, which is effectively mooted by the government's confession.

ing which they agreed to complete an eight-kilo deal at Anthony Velazquez's residence. The three (Herrera, the informant, and the agent) again travelled to Anthony Velazquez's apartment in anticipation of doing the deal. Herrera explained the details of the deal—in order to assuage the informant and the agent's fears regarding security, Herrera had arranged for the purchase to take place on two floors of the apartment building. He also expressed interest in doing other deals and that he had five or six good people who would purchase large quantities of cocaine.

After a slight delay, they entered Anthony Velazquez's apartment, accompanied by him, and joined Defendant Gonzalez and two other men who sat at a table full of money. The informant then left the building and gave the arrest signal. Forty minutes prior to the arrest, Defendant Crespo and another man entered the apartment building. Upon receiving the arrest signal, DEA agents entered both the upstairs and the downstairs apartment. In the second floor apartment were Defendants Crespo, Moctezuma, and a third man who was charged in the complaint but the charges were dismissed. They also found a bag filled with $48,000 in cash and a triple beam scale. Crespo was searched and found to be carrying a pager and $796 in cash. In the downstairs apartment, agents discovered Defendants Gonzalez, Anthony Velazquez, Luis Velazquez, and a fourth man. They also discovered a cellular phone, a loaded handgun, an electronic scale, and $55,500 in cash on a table.

After his arrest, defendant Crespo made a statement to the DEA in which he said that he had been approached earlier by Jiminez who said that they could purchase a large quantity of cocaine and that the two raised money for the purchase from friends. He also stated that his role in the deal was to ensure that nothing went wrong and to represent the interest of his money supplier. In return, he expected the supplier to provide him with either money or part of the purchased cocaine.

None of the Defendants testified in their own behalf and the jury returned a verdict of guilty on Count I, the conspiracy charge, against all Defendants.

### Legal Analysis

#### Issue 1: Whether sufficient evidence of a conspiracy existed to support Defendants' convictions?

█ The appellate court will reverse a conviction for insufficient evidence only if, after viewing the evidence in a light most favorable to the government, it is determined that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Hooks,* 848 F.2d 785, 792 (7th Cir.1988).

█ In order to prove a defendant guilty of a drug conspiracy, the government must establish beyond a reasonable doubt that a defendant both knew of the conspiracy and was a party to this agreement because he intended to associate himself with the criminal scheme. *United States v. Salazar,* 983 F.2d 778 (7th Cir.1993); *United States v. Byerley,* 999 F.2d 231, 234 (7th Cir.1993).

The Defendants argue that since these men came together on one occasion for one purpose—to buy drugs—that they could not have committed a conspiracy. The Defendants contend that the evidence revealed only the mere purchase or sale of drugs on one occasion without revealing any further involvement by Defendants in an ongoing organization. *See United States v. Townsend,* 924 F.2d 1385 (7th Cir.1991); *United States v. Lechuga,* 994 F.2d 346 (7th Cir.) *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). However, those cases address a single sale by one defendant to another defendant and hold that the single sale between Defendants is an insufficient basis for a finding of a conspiracy. In *Lechuga,* the court found that as long as the defendants were individually on opposite sides of the sale—one was buying alone and one was selling alone—they could not have conspired together to distribute cocaine. *Lechuga* stands for the proposition that mere evidence of one sale of narcotics, without more, is inadequate to support a conviction of the buyer and seller for conspiracy to distribute narcotics. *United States v. Baskin–Bey,*

45 F.3d 200, 205 (7th Cir.1995). In the present case, all of the Defendants are on one side of the cocaine deal—the buying side. The argument that this single purchase by the conspiring Defendants is insufficient to satisfy the conspiracy requirement is without merit. As in *Baskin–Bey,* the transaction at issue in the present case was the purchase that resulted from the Defendants' conspiracy to buy cocaine. In that proposed transaction, all of the Defendants were buyers. The government was the putative seller. Therefore, because the Defendants were on the same side of the relevant transaction, *Lechuga* is inapplicable. *Id.*

■ Under the stringent burden of sufficiency of the evidence, and weighing evidence in the light most favorable to the government as we must, it cannot be said that the Defendants' convictions should be overturned for insufficient evidence. Every one of the charged Defendants was present and identified as a buyer by Herrera on the date, at the place and time the sale was to take place. They were all in custody of sufficient sums to make the purchase of the cocaine. Herrera told the informant and the agent that he was assembling his "buyers" who would purchase the cocaine (from the government—the putative seller) and distribute it; the people he assembled are the Defendants in this case. The evidence is sufficient to sustain the jury's verdict of guilty on the conspiracy charge.

*Issue 2: Whether the district court correctly denied Defendants Gonzalez's and Velazquez's proposed jury instructions?*

■ In reviewing the fitness of jury instructions to which objections were properly raised in the proceedings below, "we must determine from looking at the charge as a whole, whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *United States v. Abdelkoui,* 19 F.3d 1178 (7th Cir.1994) (quotation, citations omitted). "The question of whether a jury has been properly instructed is to be determined not upon consideration of a single paragraph, sentence, phrase or word, but upon the charge as a whole." *United States v. Alexander,* 743 F.2d 472, 478 (7th Cir.1984). So long as the instructions treat the issues fairly and adequately, they will not be interfered with on appeal. *United States v. Strickland,* 935 F.2d 822, 826 (7th Cir.1991).

■ A defendant in a criminal case is entitled to have the jury consider any theory of the defense that is supported by law and that has some foundation in the evidence. *United States v. Douglas,* 818 F.2d 1317 (7th Cir. 1987). A defendant is entitled to an instruction on that theory of defense if: the defendant proposes a correct statement of the law; the theory is supported by the evidence; the theory of defense is not part of the charge; and the failure to include such an instruction would deny the defendant a fair trial. *Id.* at 1320–21.

■ In the present case, the Defendants Gonzalez and Luis Velazquez asked the court to give the following instruction: "Proof of a buyer-seller relationship, without more, is insufficient to establish a conspiracy." While this again is a proper statement of the law—i.e. defendants on opposite sides of a single purchase and sale arrangement cannot be said to have conspired together—this charge is not supported by the evidence in this case. The evidence in this case establishes that all of the Defendants were on the *same* side of the purchase and sale agreement—they were purchasers who were conspiring together to purchase and distribute cocaine. The law that forbids a finding of a conspiracy when the defendants are not acting together to distribute but are on opposite sides of a single deal, does not forbid a finding of a conspiracy in the present case. The Defendants are only entitled to a particular jury instruction when there is some evidence to support the theory behind the instruction. *United States v. Townsend,* 924 F.2d 1385, 1414 (7th Cir.1991). Therefore, because there was no evidence to support the requested instruction in relation to the crime charged, the district court properly denied giving the instruction. *See Baskin–Bey,* 45 F.3d at 205 n. 2 (not only would a buyer-seller instruction have been surplus verbiage, it might well have misled the jury).

*Issue 3: Whether the district court correctly denied Defendants Luis Velazquez's and Crespo's Motions to Quash Arrest and Suppress Evidence?*

■ A decision regarding the admission of evidence is within the broad discretion of the trial judge, and will be overturned only upon a "clear abuse of that considerable discretion." *United States v. Harris,* 914 F.2d 927, 932 (7th Cir.1990).

Defendants Luis Velazquez and Crespo contend that the DEA agents did not have probable cause to arrest them and that all evidence seized incident to their arrest should be suppressed as it is tainted by the unlawful arrest and search of their persons.

■ Law enforcement officials have probable cause to arrest when "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir.1993).

■ In the present case, the DEA agents were advised by Defendant Herrera that he had assembled his "buyers" at the two apartments for purposes of transacting the drug deal. Defendants Luis Velazquez and Crespo were two of the "buyers" whom Herrera had assembled for purposes of transacting the imminent drug deal. The magistrate judge correctly found, with respect to Luis Velazquez, that there was no other reason for defendant's presence in the apartment on that day, at that time, other than his involvement in the drug transaction.

■ The magistrate judge also correctly rejected Crespo's claim that he had a fourth amendment right to privacy in Moctezuma's apartment, on the grounds that he lacked standing to assert such a reasonable expectation of privacy in an apartment in which he had no ownership interest. *See United States v. Duprey,* 895 F.2d 303, 309 (7th Cir.1989), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990) (no standing absent possessory or ownership interest in car). Additionally, for the same reasons stated with respect to Defendant Luis Ve-

lazquez' claim, the DEA agents had probable cause to arrest and search Defendant Crespo, who was in the apartment at the time the deal was to take place. Therefore, it cannot be said that the evidence seized from his person was the fruit of an illegal search.

Accordingly, the district court properly adopted the magistrate judge's report and recommendation and denied these motions.

*Issue No. 4: Whether Defendant Crespo was denied a fair trial because of statements made by the prosecutor during closing argument?*

■ When a Defendant raised contemporaneous objections to a prosecutor's remarks at trial, this court must review the objections on appeal to "determine whether those remarks were so prejudicial as to deprive the defendant of a fair trial." *United States v. Fakhoury,* 819 F.2d 1415, 1422 (7th Cir. 1987), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988).

■ In closing argument, the prosecutor said of Defendant Crespo:

> Antonio Crespo ... shows up at the appointed place at the appointed time on the appointed date with $48,000 in cash, the cash that was in this white Crate and Barrel bag that Agent Tucci testified about. He also shows up with a scale, and you've heard about the scale and you've heard about the uses and purposes of scales.

> Money—bringing money to a drug deal, needless to say, facilitates the purchase of drugs.

Defendant Crespo contends that this statement is not supported by the evidence. The evidence shows that Crespo told the DEA agents that he had raised money for the deal and that he was there to represent the interests of his supplier. At least part of this statement—the part that charges that he brought money to the deal—does appear to be supported by the evidence. The Defendant correctly notes that there is no evidence that Crespo brought the scale to the apartment. However, the court instructed the jury that "closing arguments and any other

statements of counsel should be disregarded to the extent they are not supported by the evidence." Such an instruction is sufficient to overcome any prejudicial effect arising from these prosecutorial misstatements. *See, United States v. Van Wyhe*, 965 F.2d 528, 533 (7th Cir.1992). Accordingly, the slight deviation from the evidence in closing argument did not deprive Defendant Crespo of a fair trial and does not warrant reversal of his conviction.

*Issue No. 5: Whether the district court committed clear error when it determined the amount of cocaine reasonably foreseeable to Defendants Gonzalez and Luis Velazquez, for sentencing purposes?*

■ A sentencing court's determination of drug amounts is a finding of fact and is reviewed for clear error. *United States v. Paters*, 16 F.3d 188, 191 (7th Cir.1994).

■ The district court did not commit clear error when it determined the amount of cocaine reasonably foreseeable to Defendants Gonzalez and Luis Velazquez, for sentencing purposes. The district court arrived at drug amounts by dividing the amount of money attributable to each defendant in question by the per-kilo price of cocaine. No Defendant challenged this aspect of the court's calculation.

■ The district court sentenced Defendant Gonzalez on the full amount of the cocaine contained in both apartments, presumably because the purchase of cocaine in both the upstairs and downstairs apartments was foreseeable to him. It is relevant that the evidence established that the deal was to take place in the two separate apartments solely to assuage the fears expressed by the informant to Herrera that for security purposes there not be a large number of persons present at the transaction. The evidence established and it could reasonably be inferred, that Gonzalez, with whom the informant met on his first night in Chicago, knew the full scope of the intended purchase—not just the purchase in the one apartment. It cannot be said that the district court's factual finding with respect to defendant Gonzalez

on this sentencing issue was clearly erroneous.

■ With respect to Defendant Luis Velazquez, the court attributed only four kilos to him for sentencing purposes. This is the amount represented by the money in the downstairs apartment only. The Defendant argues that because he only had $15,000 on his person, he should not be charged with the entire amount of the cocaine attributed to the downstairs apartment. For the same aforestated reasons that support the conspiracy conviction, the district court's attribution of the full amount of the cocaine attributable to the downstairs apartment to this Defendant cannot be said to be clearly erroneous. The district court's conclusion that this Defendant could reasonably foresee the intended purchase of four kilos of cocaine was a reasonable inference, supported by the evidence.

*Issue No. 6: Did the district court commit clear error in adjusting the offense levels of Luis and Anthony Velazquez to reflect their roles in the offense and in refusing to find that Anthony Velazquez had accepted responsibility for his offense for sentencing purposes?*

■ A sentencing judge's determination concerning a defendant's role in an offense is a finding of fact, subject to review for clear error. *United States v. Yanez*, 985 F.2d 371, 374 (7th Cir.1993). This court should not find that a finding of fact is clearly erroneous unless upon review it is left "with a definite and firm conviction that a mistake has been committed." *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989).

■ The district court did not commit clear error in adjusting the offense levels of Luis and Anthony Velazquez to reflect their roles in the offense and in refusing to find that Anthony Velazquez had accepted responsibility for his offense, for sentencing purposes.

Regarding Luis Velazquez, the district court correctly decreased his offense level on the grounds that he was only a "minor participant." The Defendant contends that he was a "minimal participant", thereby entitling him to a four-level reduction. Because Ve-

lazquez had on his person $15,000 at the time of the arrest, it cannot be said that he was only a minimal participant in the deal. The district court's finding that he was a minor participant as opposed to a minimal participant was not clearly erroneous.

Regarding Anthony Velazquez's role in the conspiracy, the district court accepted the Probation Department's recommendation of a three level enhancement based on the fact that he was a manager or supervisor. The evidence supports a finding that Anthony Velazquez was more than a mere participant. He was present with the informant and the agent on the prior occasions when the deal was both discussed and delayed. It was not clear error for the district court to hold as a matter of fact that this Defendant had management responsibilities over the activities of the conspiracy.

Finally, the district court determined that Defendant Gonzalez was not entitled to a two point reduction for acceptance of responsibility. Velazquez argues that he went to trial solely to preserve an issue for appeal with respect to whether a conspiracy exists when there is a single purchase and sale and co-defendants are on the same side of the conspiracy. It cannot be said under the evidence presented that this Defendant who went to trial and disputed the factual basis for the government's defense accepted responsibility so that he would be entitled to a downward departure for sentencing purposes. The district court's finding of fact on this issue was, therefore, not clearly erroneous.

In view of all of the foregoing, the judgment of the district court as to each Defendant is AFFIRMED.

### ORDER

#### May 23, 1995

On consideration of the petition for rehearing with suggestion for rehearing *en banc* filed by defendant-appellant on May 12, 1995, the opinion of the Court entered April 28, 1995, is modified to reflect that, based upon the government's confession of error, the judgment in this criminal case against defendant Carmello Moctezuma is VACATED and the case is REMANDED for any further proceedings. In all other respects, the opinion of the Court remains unchanged.

The petition for rehearing is denied.