In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1433

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL SPAGNOLA,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07-CR-441-2—**Harry D. Leinenweber**, *Judge.*

ARGUED OCTOBER 19, 2010—DECIDED JANUARY 21, 2011

Before CUDAHY and ROVNER, *Circuit Judges*, and
ADELMAN, *District Judge*.[*]

ADELMAN, *District Judge*. A jury convicted Michael
Spagnola of drug and firearm offenses arising out of
his participation in a scheme to rob a drug stash house
(which turned out to be a sting operation), and the
district court sentenced him to a total of 276 months in

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

prison. On appeal, Spagnola challenges his conviction and his sentence. We affirm.

## I. BACKGROUND

The government indicted Spagnola and his brother, Robert George, on charges of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine (count one), 21 U.S.C. § 846, and attempted possession with intent to distribute 5 kilograms or more of cocaine (count two), 21 U.S.C. § 841(a)(1). The government charged Spagnola separately with possessing a firearm during and in relation to a drug trafficking crime (count three), 18 U.S.C. § 924(c), and possessing a firearm as a felon (count four), 18 U.S.C. § 922(g)(1). The charges arose out of a Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") operation, in which a government informant approached George about helping a drug courier (actually an ATF agent) steal cocaine from the courier's employer. The informant secretly recorded his conversations with George and Spagnola, and the recordings constituted the principal evidence against them.

The informant first approached George about the scheme in early June 2007. George initially told the informant that he was too busy and to contact Spagnola. The informant spoke with George again on June 14, and this time George called Spagnola on the informant's behalf. George then told the informant that it would probably "be me and him"—referring to Spagnola—who would commit the courier robbery. George also mentioned an unrelated robbery Spagnola was planning, with which Spagnola might need the informant's help, and

stated that other members of their family dealt drugs. At George's suggestion, the informant then called Spagnola and set up an in-person meeting. At the meeting, Spagnola told the informant that he had agreed to meet only because George vouched for the informant. The informant then laid out the plan to steal drugs from the garage where the courier picked up cocaine. Spagnola agreed to participate and asked the informant to join him in another robbery. The next day, Spagnola met with the informant and the courier/agent, the courier reviewed the plan, and Spagnola reiterated that he wanted to participate. Because there would be armed guards at the garage, Spagnola volunteered to bring assault weapons to the job.

On June 25, George met with the informant. George advised the informant that he had spoken to Spagnola about the robbery and assured the informant that Spagnola was dependable. George suggested that they rob the courier rather than the stash house and said that he knew where he could sell the drugs they would steal. The following day, George met with the informant and the courier, and the courier again explained the plan, as he had in the previous meeting with Spagnola.

The informant and George met again on July 9. Spagnola was supposed to attend this meeting, but he apparently overslept and failed to show up. Nevertheless, George advised the informant that he had recently been with Spagnola when Spagnola obtained a gun to use in the robbery. George than called Spagnola, and they discussed obtaining ammunition. George told Spagnola

that the robbery would occur that week. Later that day, the informant met with Spagnola, they discussed the weapons they would use in the robbery, and Spagnola again asked the informant to help him with unrelated robberies. They agreed to meet with George and the courier on July 11, the day before the planned robbery.

On July 11, Spagnola, the informant, and George were supposed to meet; this time George did not show up, but he did speak to Spagnola by phone. Spagnola and the informant then met with the courier and discussed the robbery. After the courier left, Spagnola and the informant discussed whether they should give George any of the drugs and eventually agreed to give him 1 or 2 kilograms for his participation.

On July 12, the day the robbery was to occur, George told the informant that he could not participate because he had to watch his son. George said he would get someone named "Eddie" to take his place, and that Spagnola knew Eddie. Spagnola instead suggested another one of their brothers, John. George reiterated that he had a buyer lined up for the cocaine. The informant then picked up Spagnola, who was armed with two guns. He encouraged Spagnola to find another participant, but Spagnola declined. The informant then drove Spagnola to a location where ATF agents arrested him. In a post-arrest statement, Spagnola told the agents that he expected to receive 15 of the 30 kilograms they would steal, and that he could sell the drugs. Agents arrested George the next day, and in his post-arrest statement George expressed surprise at his arrest for

robbery. However, after agents advised that they had recorded his conversations with the informant, George said, "Oh, then you have me on conspiracy."

Spagnola moved to sever his trial from George's, arguing that he would be prejudiced by George's anticipated entrapment defense and by the introduction of George's hearsay statements to the informant, which cast him in a bad light. The district court denied the motions.

At trial, the government introduced the recorded conversations between the defendants, the informant, and the courier/agent, as well as George's post-arrest statement, without objection by Spagnola. Spagnola testified on his own behalf, claiming that George "was never supposed to be there, ever," and that the only plan he had was with the informant. He admitted speaking with George the day of the robbery but denied discussing the robbery with George. The jury found him guilty on all counts.

At sentencing, over Spagnola's objection, the district court imposed a 2-level enhancement under U.S.S.G. § 3C1.1 after determining that Spagnola committed perjury at trial, adopting a guideline range of 324-405 months on counts one, two, and four. Spagnola argued that he should not receive a 5-year consecutive sentence on count three, the § 924(c) count, based on that statute's "except clause" because he was subject to a longer mandatory minimum term on the drug counts, counts one and two. The district court rejected the argument based on Seventh Circuit precedent and sentenced Spagnola to

a below-guideline sentence of 216 months on counts one and two, and 120 months on count four, running concurrent, and 60 months on count three, running consecutive, for a total of 276 months.

## II. DISCUSSION

On appeal, Spagnola challenges the sufficiency of the evidence on the conspiracy count, the denial of his motions to sever, and the district court's imposition of the U.S.S.G. § 3C1.1 enhancement and a consecutive sentence on the § 924(c) count. We consider each issue in turn.

### A.  Sufficiency of the Evidence on the Conspiracy Count

Spagnola first argues that the evidence was insufficient to establish that he conspired with George. A defendant challenging the sufficiency of the evidence on appeal faces a nearly insurmountable hurdle. *United States v. Lupton*, 620 F.3d 790, 801 (7th Cir. 2010); *United States v. Corson*, 579 F.3d 804, 809 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1751 (2010). We will reverse only if, taking the evidence in the light most favorable to the prosecution, we are convinced that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Corson*, 579 F.3d at 809. We do not re-weigh evidence or second-guess the jury's credibility determinations; rather, we will overturn a conviction only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *Id.*

at 809-10 (citing *United States v. Farris*, 532 F.3d 615, 618 (7th Cir. 2009)).

In order to establish a conspiracy to possess with intent to distribute cocaine under 21 U.S.C. § 846, the government must show: (1) the existence of an agreement between two or more persons to possess with intent to distribute cocaine; (2) that the defendant knew of the agreement; and (3) that the defendant intended to join the agreement. *United States v. Taylor*, 600 F.3d 863, 868 (7th Cir. 2010). The government must prove that the defendant conspired "with at least one true co-conspirator." *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993). In other words, a "conspiracy cannot be established between one criminally-minded individual and a government agent or informer." *United States v. Dumeisi*, 424 F.3d 566, 580 (7th Cir. 2005).

Spagnola argues that the government failed to prove that he conspired with anyone other than the informant and the undercover agent posing as the courier. He argues that he and George did not agree on a definite plan regarding the robbery or the sale of cocaine. He points out that all of the participants never met at one time, that George did not attend the July 11 meeting nor accompany him on the day of the robbery, and that the participants discussed obtaining assistance from others.

The government presented sufficient evidence to enable a reasonable jury to conclude that Spagnola conspired with George. The evidence showed that George recruited Spagnola to participate in the scheme and arranged for him to meet the informant. Spagnola acknowledged meeting with the informant only because George

vouched for him. While George and Spagnola did not simultaneously meet with the agent and the courier, the evidence showed that they spoke to each other about the robbery several times, George accompanied Spagnola when Spagnola acquired a gun to use in the robbery, and both Spagnola and George met with the informant and the courier several times.

While some of the details may have been unclear, a conspiracy does not require the precise coordination Spagnola suggests. *See, e.g.*, *United States v. Haynes*, 582 F.3d 686, 698 (7th Cir. 2009) ("Two or more persons conspired together if they embraced a common criminal objective, even if they did not know each other or participate in every aspect of the crime.") (internal quotation marks omitted), *amended*, 353 Fed. Appx. 58 (7th Cir. 2009), *cert. denied*, 2010 WL 604311 (U.S. Nov. 29, 2010); *United States v. Katalinich*, 113 F.3d 1475, 1483 (7th Cir. 1997) (explaining that to be a member of a conspiracy, the defendant need not know all the other members or the means by which the purpose was to be accomplished; he need only be aware of the common purpose and a willing participant). The evidence was sufficient to show that George and Spagnola conspired to obtain the cocaine for re-distribution; any uncertainty as to precisely how they would sell the drugs does not upset the verdict.

## B.  Severance

Next, Spagnola argues that the district court erred in denying his motions for severance. He faces an uphill

battle on this issue as well. "In all but the 'most unusual circumstances,' the risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009) (quoting *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985)), *cert. denied*, 130 S. Ct. 1312 (2010). There is a strong preference that co-conspirators be jointly tried, particularly where, as here, they were indicted together. *Id.* We will reverse the denial of a request for severance only if the district court abused its discretion, and the defendant can demonstrate actual prejudice based on the joint trial. *Id.* (citing *United States v. Souffront*, 338 F.3d 809, 831 (7th Cir. 2003)); *United States v. Calabrese*, 572 F.3d 362, 367-68 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1879 (2010). Because Fed. R. Crim. P. 14 "assigns to the district court the task of balancing the cost of multiple trials against the possible prejudice inherent in a single trial, a defendant bears 'an extremely difficult burden' of showing that the district court abused its discretion." *United States v. Rollins*, 301 F.3d 511, 518 (7th Cir. 2002) (quoting *United States v. Moore*, 115 F.3d 1348, 1362 (7th Cir. 1997)).

Spagnola first argues that the admission of George's "oh, then, you have me on conspiracy" statement violated his Sixth Amendment rights. *See Bruton v. United States*, 391 U.S. 123, 135-37 (1968) (holding that a defendant's Sixth Amendment right to confront witnesses against him is violated when the confession of a non-testifying co-defendant, in which the defendant is expressly implicated as a participant in the crime, is admitted in the joint trial

of the two defendants). However, Spagnola did not raise a *Bruton* issue in his pre-trial motions, nor did he object to the admission of this statement at trial. Thus, he likely forfeited the argument, permitting review only for plain error.[1] In his reply brief, Spagnola denies forfeiting the issue but fails to point out where he raised it. It is hard to see how the district court should have teased a *Bruton* issue from Spagnola's pre-trial motions, which focused on George's alleged co-conspirator statements and trial strategy. Regardless, Spagnola fails to establish a *Bruton* violation.

A *Bruton* violation occurs only if the confession of a non-testifying co-defendant facially incriminates the non-confessing co-defendant. *See, e.g.*, *United States v. Brooks*, 125 F.3d 484, 501 (7th Cir. 1997). George's statement neither facially incriminates Spagnola nor implies that he was a co-conspirator. George made the statement after being advised that the government had recorded his communications with the informant; thus, the most reasonable inference to be drawn from the statement is that George was confessing to conspiring, not with Spagnola, but with the informant. Because there was no obvious link between the statement and Spagnola, the district court's limiting instruction—that pre-trial statements were to be considered only against the defendant

---

[1] In his motions below, Spagnola argued that a joint trial would compromise his Fifth and Sixth Amendment rights to a fair trial and to confront witnesses, but he did not mention George's post-arrest statement or *Bruton*.

who made them—was sufficient. *See Richardson v. Marsh*, 481 U.S. 200, 208 (1987).

Spagnola's argument that the district court should have severed the trial based on George's statements about other robberies and their family's drug dealing fares no better. Because the statements fall within Fed. R. Evid. 801(d)(2)(E),[2] which Spagnola does not dispute, they would have been admissible even in a severed trial. Spagnola argues that the district court should have found the statements prejudicial under Fed. R. Evid. 403. However, Spagnola cannot show prejudice based on the admission of these statements because he too spoke of other robberies with the informant. Even without George's statements, the jury would have heard much of the same evidence from Spagnola's mouth. And these statements, too, would have been admissible even in a severed trial.

To the extent that the jury heard that Spagnola's family dealt drugs, any error was harmless given the strength of the government's case. "The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Emerson*, 501 F.3d 804, 813 (7th Cir. 2007) (internal quotation marks omitted). Given the recorded evidence

---

[2] Under this Rule, "A statement is not hearsay if . . . offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

against Spagnola, it is extremely unlikely that George's stray comments on this subject swayed any juror.

## C. Spagnola's Sentence

### 1. Enhancement for Perjury

Regarding his sentence, Spagnola argues that the district court erred in imposing a 2-level enhancement under U.S.S.G. § 3C1.1 based on perjury at trial. We review the district court's determination that a defendant provided false testimony for clear error, a standard under which we reverse only if we are firmly convinced that a mistake has been made. *United States v. DeLeon*, 603 F.3d 397, 403 (7th Cir. 2010). We find no such error here.

Spagnola notes that he did not contest much of the government's evidence, and that the enhancement should not be based simply on the fact that he testified and was convicted. *See United States v. Dunnigan*, 507 U.S. 87, 95 (1993) ("[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury."). The district court did not impose the enhancement based on Spagnola's conviction by the jury. Nor, as defendant contends, did the court impose it based on Spagnola's alleged denial that he spoke to George on the day of the robbery. (He admitted that he did, just not about the robbery.) Rather, the court found that Spagnola lied about the central issue in the case, whether he conspired with George to obtain the cocaine. *See United States v.*

*Brimley*, 148 F.3d 819, 823 (7th Cir. 1998) (stating that the district court should in imposing a § 3C1.1 enhancement based on perjury find falsity, willfulness and materiality). As the district judge noted, Spagnola understood that he could not be convicted if he conspired only with a government agent, and he tailored his testimony accordingly.

### 2.  Consecutive Sentence for § 924(c) Violation

Finally, Spagnola challenges his 5-year consecutive sentence under § 924 based on the statute's "except clause," which states:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). Spagnola argues that because he was subject to a 10-year mandatory minimum on the drug counts, the district court should not have imposed the 5-year consecutive sentence under § 924(c). *See United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008).

We have previously rejected this construction of the statute, *United States v. Easter*, 553 F.3d 519, 525 (7th Cir. 2009), and the Supreme Court recently confirmed our understanding, *Abbott v. United States*, 131 S. Ct. 18 (2010). The Justices explained that:

> a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction. Under the "except" clause as we comprehend it, a § 924(c) offender is not subject to stacked sentences for violating § 924(c). If he possessed, brandished, and discharged a gun, the mandatory penalty would be 10 years, not 22. He is, however, subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum.

*Id.* at 23; *see also United States v. Hudson*, 627 F.3d 309 (7th Cir. 2010). Because Spagnola faced no greater minimum for his possession of the firearms in furtherance of the drug trafficking offense, the district judge properly sentenced him to 5 years consecutive on the § 924(c) count, notwithstanding the 10-year minimum applicable to the drug counts.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM Spagnola's convictions and sentence.