In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-1430 & 10-1657

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT GEORGE,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07-CR-441—**Harry D. Leinenweber**, *Judge.*

ARGUED AUGUST 16, 2011—DECIDED SEPTEMBER 9, 2011

Before CUDAHY and ROVNER, *Circuit Judges*, and
ADELMAN, *District Judge*.*

CUDAHY, *Circuit Judge*. This opinion addresses the last
piece of unfinished business in the consolidated appeal
of Michael Spagnola and Robert George: the sufficiency
of the evidence supporting George's conviction for at-

* The Honorable Lynn S. Adelman of the Eastern District of
Wisconsin, sitting by designation.

tempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). For the reasons that follow, we affirm.

I.

Briefly,[1] George and Spagnola are half-brothers, and for reasons that are unclear, they came to the attention of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") as potentially being inclined toward armed robbery and drug dealing. In June 2007, the ATF set up a sting, whereby an ATF informant (or confidential informant, thus "CI") approached George with an idea to raid a drug stash house the CI knew about, and to steal and resell the cocaine. The CI claimed to know a disaffected drug courier, associated with the stash house, who would support their robbery efforts. The courier was actually an ATF agent. (The interactions involving George and Spagnola were captured on tape, and these recordings constituted the bulk of the trial evidence.)

George agreed to the CI's proposed scheme, and he recruited his half-brother Spagnola into the scheme sometime around June 11. Spagnola indicated that he was participating only because George had vouched for the CI. Throughout June and early July, the four (George, Spagnola, the CI and the "drug courier" ATF agent) met

---

[1] This panel's earlier opinion in this appeal features a more thorough exposition of the underlying facts. *United States v. Spagnola*, 632 F.3d 981 (2011).

several times and developed the plan. Spagnola obtained a gun and ammunition. On June 25, in a meeting with the CI, George suggested that instead of robbing the stash house, they could draw out the drug courier and rob him—thereby minimizing the risk of the operation. The CI agreed and this became the revised plan. Also around this time, George indicated that he had a willing buyer for the cocaine, and that George had someone in mind to dispose of five kilos immediately. The three agreed that the robbery would be on July 12: the three would meet and drive together to the scene, a forest preserve.

But on the morning of the planned robbery, George surprised Spagnola and the CI by declining to attend. He explained to the CI that he had to watch his son. George reiterated that he had a purchaser for the anticipated yield of cocaine. The CI stated that George would be paid $1000 per brick for selling the cocaine. In a separate conversation, between George and Spagnola, George suggested a man named Eddie as a replacement. Spagnola suggested instead that George enlist their third brother, John, to replace George. It is not clear whether George contacted a potential replacement, or whether Spagnola succeeded in finding one himself.

Spagnola, armed with two guns, continued on to the scene of the planned robbery. Consistent with the ATF's planned sting operation, he was arrested. George was arrested the next day. After a joint trial, both Spagnola and George were convicted of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, and attempting to possess with intent to distribute

cocaine.[2] We have already upheld Spagnola's convictions, and we accepted George's counsel's *Anders* submission[3] as to several trial and sentencing issues, and as to the sufficiency of his conspiracy conviction.

## II.

The remaining question is whether the evidence was sufficient to support George's conviction for attempted possession of cocaine, notwithstanding his absence on the morning of the robbery. Because this is an appellate review of the evidentiary sufficiency of a conviction, we inquire only into whether, when the facts are viewed in the light most favorable to the Government, a rational jury could have found the elements of the crime beyond a reasonable doubt. *See, e.g., United States v. Woods*, 556 F.3d 616, 621 (7th Cir. 2009) (citing *United States v. Stevens*, 453 F.3d 963 (7th Cir. 2006)). We often describe this appellate hurdle as "nearly insurmountable*." See, e.g., Spagnola*, 632 F.3d at 981; *United States v. Spells*, 537 F.3d 743, 746 (7th Cir. 2008).

Another legal principle is pivotal to this appeal: aiding and abetting liability, under 18 U.S.C. § 2.[4] Under subsec-

---

[2]  Spagnola was also charged with and convicted of two weapons charges. *See Spagnola*, 632 F.3d at 984-85.

[3]  *See Anders v. California*, 386 U.S. 738 (1967).

[4]  At the outset, we note that it is possible to aid and abet a principal's attempt crime, including attempted possession of

(continued...)

tion (a) of that section, "Whoever commits an offense against the United States or aids [or] abets . . . its commission, is punishable as a principal." A sufficient case for aiding and abetting liability consists of "(1) association with the unlawful venture, (2) knowing participation in it, and (3) active contribution toward its success." *United States v. McNeese*, 901 F.2d 585, 608 (7th Cir. 1990). As to the participation and active contribution elements, "'a high level of activity need not be shown' although 'mere presence' and 'guilt by association' are insufficient." *United States v. Sewell*, 159 F.3d 275, 278 (7th Cir. 1998) (citations omitted).[5] Oral communication can sometimes be sufficient if it is intended to support the completion of the crime. *See United States v. Sacks*, 620 F.2d 239, 241 (10th Cir. 1980) (affirming a conviction on an aiding and abetting theory where "[the] evidence plainly shows defendant acted affirmatively, though only through the act of speaking words calculated to assist in completing the sale.").

We agree with the Government that George's acts leading up to the day of the robbery were sufficient to support the conviction on an aiding and abetting theory.[6]

---

[4] (...continued)

narcotics. *See United States v. Valencia*, 907 F.2d 671, 677 & n.4 (7th Cir. 1990).

[5] In like vein, aiding and abetting liability is not to be conflated with conspiracy, although the same facts may often support both.

[6] An aiding and abetting instruction was issued to the jury in this case. Because we need only decide whether a reasonable
(continued...)

A rational jury could have found that George aided and abetted Spagnola's attempt to possess cocaine on the appointed day. Initially, there is no question that George associated with this unlawful venture, so the matter boils down to whether he knowingly participated and actively contributed to its success.[7] We think that the act of recruiting Spagnola into the conspiracy, although it occurred about a month before the day of the attempt, was nevertheless "active contribution to the plan's success." So was altering the original plan of the robbery in order to double-cross the drug courier. Moreover, the jury was entitled to believe George's representations,

---

[6]  (...continued)
jury could have convicted George on any permissible theory of liability, we do not reach the Government's weaker argument that George himself committed an "attempt" despite his absence on the morning of the robbery. *See United States v. Turner*, 551 F.3d 657, 666 (7th Cir. 2008).

[7]  Further, there is no question that George "knew" the unlawful nature of the venture, within the meaning of the second of the three elements described in *McNeese*. So we consider that if George "actively contributed," then he also "knowingly participated," and thus all three elements will be satisfied. In any event, this court has often used formulations of aiding and abetting liability that contain only two elements. *See, e.g.*, *United States v. Taylor*, 637 F.3d 812, 816 (7th Cir. 2011) ("To establish that Taylor aided and abetted [the principal], the government needed to prove that Taylor associated himself with the criminal activity and that he voluntarily participated in it."). We therefore focus on the "active contribution" element.

captured on tape, that he had arranged to dispose of the cocaine.[8]

George's contrary position does nothing to detract from the significance of his acts leading up to the attempted robbery. Rather, his position amounts to an argument that the dispositive fact was his absence on the morning of the robbery. But one need not be physically present at a crime scene to aid and abet the principal, because "one who puts in motion or assists in the illegal enterprise . . . is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense." *United States v. Garrett*, 720 F.2d 705, 714 (D.C. Cir. 1983) (citing to the legislative history of 18 U.S.C. § 2, H.R. Rep. No. 304, 80th Cong., 1st Sess. A5 (1947)). *See also United States v. Garcia*, 242 F.3d 593, 597 (5th Cir. 2001) ("Just as the mere presence at the scene of the crime is not sufficient, by itself, to support aiding and abetting liability, mere absence from the scene does not, by itself, negate such liability.") (citations omitted); *United States v. Waters*, 461 F.2d 248, 251 (10th Cir. 1972). Indeed, requiring physical presence or contemporaneous contributing acts would greatly narrow aiding and abetting liability, conceivably exonerating supportive acts that are indispensable to

---

[8] *See, e.g., United States v. Wesson*, 889 F.2d 134, 135 (7th Cir. 1989) ("You may 'abet' the crime of possession with intent to distribute by procuring the customers and maintaining the market in which the possession is profitable, even though you do nothing else to help the possessor get or retain possession.").

the principal's crime.[9] And we are aware of no particular limit on the time that may pass between the "active contribution to the plan's success," and the principal's crime. Undoubtedly, these considerations—the passage of time and the presence *vel non* of the alleged abettor-defendant at the principal's crime—are important considerations, but they are not *per se* decisive of aiding and abetting liability.

Much of the appeal of George's argument seems to derive from the fact that his nonattendance on the day of the robbery was unplanned. Although the point is never made explicit, there seems to be a subtle invitation to treat George as having "withdrawn" from the enterprise by absenting himself on the day of the robbery. After all, if George and Spagnola had planned all along that Spagnola would commit the robbery without George present, George's position (that his preparatory efforts

---

[9] A 1948 Third Circuit case involving organized crime presents a good example of why the presence at the crime scene, and the contemporaneousness of the abettor's assistance, cannot properly be dispositive:

> Amorosa, brought into the group by Silano, guided the [hijacked] tractor drawn trailer to the house in New Jersey where it was unloaded, Silano assisting; Amorosa then said he would dispose of the stolen goods. All that bespeaks principals in this crime . . . . The absence of the appellants from the immediate scene of the [hijacking] is not enough to defeat their conviction as principals.

*United States v. Amorosa*, 167 F.2d 596, 599-600 (3d Cir. 1948).

did not amount to aiding and abetting) would lose much of its force. But his present argument is in fact precisely that weak, because he did not effectively withdraw by failing to participate on the day of the robbery. *See Garrett*, 720 F.2d at 714 (explaining that withdrawal for aiding and abetting purposes mirrors withdrawal in the context of conspiracy, and "to establish an effective withdrawal [from a conspiracy], the defendant must show that he took affirmative action to defeat or disavow the purpose of the conspiracy."). An abettor cannot withdraw merely by satisfying himself that his participation is no longer needed. *Id.*

For the foregoing reasons, we AFFIRM the judgment of the district court.