NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 2, 2012
Decided October 10, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 12-1760

UNITED STATES OF AMERICA,
    *Plaintiff–Appellee,*

v.

BYRON CATHEY,
    *Defendant–Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.

No. 09 CR 696-2

Charles R. Norgle,
*Judge*.

**O R D E R**

Byron Cathey was convicted after a jury trial of participating in a drug conspiracy and distributing cocaine. On appeal he argues that the evidence is insufficient to show he engaged in a conspiracy or, as the government theorized, aided and abetted a drug sale. Because the evidence is sufficient to sustain both convictions, we affirm the judgment.

A grand jury charged Cathey and Douglas Greer with one count of conspiracy to possess and distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and one count of distribution of cocaine, *id.* § 841(a)(1). Greer pleaded guilty to the conspiracy and did not testify for either side at Cathey's trial. At that trial the government presented recordings of phone calls and meetings showing that Cathey had brokered a drug deal.

The DEA wanted to target Greer. Their informant, Tommie Jones, had lost contact with Greer years earlier but knew that Cathey, a longtime friend of Jones, was acquainted with Greer and would have his phone number. Cathey agreed to assist and called Greer to discuss the quantity, price, and location for the exchange of money and cocaine. Cathey and Jones exchanged phone calls in which Jones asked Cathey to negotiate a lower price from Greer. During one call Cathey told Jones that Greer was unhappy about lowering his price; Cathey then handed his phone to Greer, who spoke directly to Jones and agreed to meet in person. The three men later met to work out the details, including a fee to be paid to Cathey, and agreed to make the exchange that same night. At the appointed time, Jones met Cathey and got into Cathey's car while they waited for Greer. Cathey tried to keep an agitated Jones calm by assuring him that Greer would arrive soon. When Greer arrived Jones left Cathey's car and gave Greer a bag containing money in exchange for approximately 7 kilograms of cocaine. Agents arrested Greer immediately; Cathey already had departed and was arrested later.

At the close of the evidence, Cathey moved orally for a judgment of acquittal. *See* FED. R. CRIM. P. 29(a). Cathey's motion, defense counsel told the district court, "really only goes to the conspiracy count, Count 1." According to counsel, the government had proved that "Jones was going to pay Cathey's broker's fee," and thus, counsel reasoned, Cathey's agreement had to be with Jones, not Greer. The district court denied the motion, saying only that the evidence on both counts is sufficient. After the jury verdicts, Cathey renewed his motion in writing. *See* FED. R. CRIM. P. 29(c). This time Cathey challenged both counts but on the same basis as before: Cathey was working Jones's side of the transaction and thus could not have conspired with, or aided and abetted, Greer.

On appeal Cathey challenges the sufficiency of the evidence for both of his convictions. More precisely, he contends that the district court erred in denying his Rule 29 motions, but that is the same as saying that the evidence fails to support his convictions. *See United States v. Johns*, 686 F.3d 438, 446 (7th Cir. 2012). Cathey argues that the evidence linked him only to Jones in the drug deal, and thus he insists that he could not be convicted on either count because Jones as a government informant lacked the requisite criminal intent. We will uphold Cathey's convictions if any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

To convict Cathey of conspiracy under § 846, the government needed to prove that he knowingly and intentionally joined in an agreement with one or more other persons to violate the drug laws. *See United States v. Avila*, 557 F.3d 809, 814 (7th Cir. 2009); *United States v. Corson*, 579 F.3d 804, 810 (7th Cir. 2009). The government was not required to prove, however, that Cathey performed any overt act in furtherance of the conspiracy. *See United*

*States v. Garcia*, 45 F.3d 196, 198 (7th Cir. 1995). An agreement between a set of defendants to sell drugs on one occasion can be a conspiracy by itself. *United States v. Herrera*, 54 F.3d 348, 354 (7th Cir. 1995); *United States v. Baskin-Bey*, 45 F.3d 200, 205 (7th Cir. 1995).

An accused can be found guilty of an unlawful act under an aiding-and-abetting theory if he associates with, participates in, and contributes towards the success of that act. *United States v. George*, 658 F.3d 706, 708 (7th Cir. 2011). The government may support this theory through a defendant's oral communication with the seller, *id.*, his non-criminal conduct that facilitates the crime, *United States v. Hatchett*, 245 F.3d 625, 641 (7th Cir. 2001), by using the same evidence that supports the existence of a conspiracy, *George*, 658 F.3d at 708 n.5; *Garcia*, 45 F.3d at 199, or by attributing to the defendant liability for the reasonably foreseeable acts of his coconspirators committed during and in furtherance of the conspiracy, *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946).

Cathey asserts that his role in the drug exchange was only as a broker; apparently he assumes that a broker cannot be guilty of conspiracy or a substantive crime such as distribution. But we and our sister circuits have affirmed the convictions of brokers (also called "steerers" or "middlemen") several times, both for conspiracy, *see United States v. Gilmer*, 534 F.3d 696, 702 (7th Cir. 2008); *United States v. Payton*, 328 F.3d 910, 911–12 (7th Cir. 2003) (collecting cases); *Garcia*, 45 F.3d at 197–99; *United States v. Cea*, 914 F.2d 881, 886–87 (7th Cir. 1990) (distinguishing broker who aids drug deal from one who only directs buyer to seller); *United States v. Sostre*, 967 F.2d 728, 732 (1st Cir. 1992); *United States v. Tarantino*, 846 F.2d 1384, 1394–95 (D.C. Cir. 1988); *United States v. Rodriguez*, 765 F.2d 1546, 1552–53 (11th Cir. 1985), and for substantive offenses, *see Gilmer*, 534 F.3d at 702 (possession of heroin); *Garcia*, 45 F.3d at 199–200 (delivery of narcotics); *United States v. Ashley*, 606 F.3d 135, 137, 141 (4th Cir. 2010) (firearms offense); *United States v. Dworken*, 855 F.2d 12, 23 (1st Cir. 1988) (attempted possession of drugs); *United States v. Brunty*, 701 F.2d 1375, 1381 (11th Cir. 1983) (collecting cases of distribution convictions based on defendant's acting as broker, deliverer, or price negotiator).

Both *Gilmer* and *Garcia*, cited above, have facts very similar to this case. In *Gilmer*, an informant posing as a buyer contacted a drug dealer, who carried the offer up the supply chain to Gilmer. 534 F.3d at 699. Gilmer agreed to contact his supplier and to broker the deal. *Id.* at 699–700. Gilmer, like Cathey, acquainted the buyer and supplier in person and through phone calls and appeared at the scene of the sale. *Id.* at 702. We decided that the evidence sufficiently proved Gilmer's involvement in a drug conspiracy and affirmed his conviction. *Id.* Similarly, Garcia unwittingly accepted a broker's fee from an informant after making phone calls and arranging an in-person meeting to facilitate the informant's purchase of drugs from a friend who dealt drugs. 45 F.3d at 197–98. We affirmed his convictions for conspiracy and for distribution under an aiding-and-abetting theory *because*

*of* his role as a broker, finding sufficient evidentiary support in the informant's testimony. *Id.* at 198–200. Garcia's broker's fee and conversations with the informant and the supplier also corroborated the testimony. *Id.* at 199.

Cathey tries to distinguish *Gilmer* by arguing that Gilmer was on the opposite side of the deal from the informant whereas he and Jones, the informant, were on the same side. Cathey also distinguishes his situation from *Herrera*, another decision on which the government relies, because Herrera agreed to purchase cocaine from an informant and "broker" it to his buyers, whom he gathered at a home with the informant to discuss the transaction. 54 F.3d at 352–53. Although Cathey may be right that the situation in *Herrera* was different than his, he is incorrect when he describes himself as solely aligned with Jones.

Some facts support Cathey's contention that he and Jones were on the same side of the transaction: Jones arguably agreed to pay Cathey's broker's fee, Jones contacted Cathey to reach Greer and not the other way around, and Cathey tried to keep Jones calm while they waited together for Greer before the exchange (although this fact also supports the view that Cathey aided Greer by trying to prevent Jones from abandoning the deal). In contrast, the evidence of Cathey's efforts on behalf of Greer might seem more limited, but of course Cathey was not recording his conversations with Greer, nor did Greer testify. Still, in one call to Jones, Cathey was apparently present with Greer, and Greer took the phone and spoke directly with Jones. Moreover, Cathey attended both meetings between Jones and Greer, made the exchange possible, and saw it through to the end: Greer delivered the cocaine and accepted payment.

We have concluded in cases where a broker or middleman worked only for one party to a drug deal that he could not be guilty of conspiring with a party on the other side. *See United States v. Thomas*, 284 F.3d 746, 754 (7th Cir. 2002); *United States v. Rivera*, 273 F.3d 751, 754–56 (7th Cir. 2001); *United States v. Contreras*, 249 F.3d 595, 599 (7th Cir. 2001). Nor can a broker be guilty of conspiring with an informant, regardless of the side for which the informant worked. *See Contreras*, 249 F.3d at 599; *Corson*, 579 F.3d at 811. But when a broker aids the culpable parties on *both* sides of the transaction, his collaboration with either side is punishable as a conspiracy. *See Payton,* 328 F.3d at 912; *see, e.g., Gilmer*, 534 F.3d at 702; *Garcia*, 45 F.3d at 197–200; *United States v. Crowder*, 36 F.3d 691, 695–96 (7th Cir. 1994); *Rodriguez*, 765 F.2d at 1550. Here, Cathey could have declined to help Jones or given him Greer's phone number and ended the call. Instead he agreed to negotiate a price for Jones, thus delivering a customer to Greer. Cathey then helped Greer secure the sale by arranging the first meeting and later waiting with Jones before the exchange, providing him moral support but also assuring that he would stay to buy the cocaine from Greer. Viewing the

evidence in the light most favorable to the government, Cathey's involvement is best described as collaborative with both sides and not as one-sided.

Cathey also adds other, small points to contest his convictions. But these arguments are all without merit. Cathey cannot escape liability simply because he did not buy or sell the cocaine himself, *see Hatchett*, 245 F.3d at 641, or because he had left the scene before the exchange took place, *see George*, 658 F.3d at 709; *Garcia*, 45 F.3d at 199. And whether or not this was Cathey's first time working with Jones is irrelevant: This single agreement with Greer and Jones is enough to support his convictions. *See Corson*, 579 F.3d at 810.

**AFFIRMED**.